IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SEFO FATAI,<br><br>   Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF<br>HONOLULU, *et al.*,<br><br>   Defendants. | Case No. 19-cv-00603-DKW-WRP<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PARTIAL LEAVE TO AMEND** |

Plaintiff Sefo Fatai was arrested and tried multiple times for drug-related crimes but was never convicted.   He claims the local police officers and supervisors involved in his arrest and prosecution were aware he was innocent and engaged in a host of unconstitutional conduct to manufacture evidence and unlawfully seize both his property and person.   He seeks relief for a multitude of alleged civil rights violations and torts committed against him.   Defendants have moved to dismiss some or all of the claims against them.[1]   Because Fatai fails to specifically allege how each Defendant violated his rights and/or harmed him, the

---

[1] Defendant Kealoha is the lone exception, having failed to file any responsive pleading or motion related to Fatai's individual capacity claims against him.

Court GRANTS Defendants' motions to dismiss WITH PARTIAL LEAVE TO AMEND.

## **RELEVANT BACKGROUND**

Honolulu Police Officer Ramos pulled over a woman named Kristina Medford for an unspecified driving violation.[2]   Dkt. No. 44 at 6.   Medford possessed methamphetamine.   *Id.*   Officer Ramos determined to flip Medford; that is, to have her implicate someone else in the drug trade in exchange for possible favorable treatment in the criminal justice system.   *Id.*   Ramos and other police officers also allegedly threatened to prevent Medford from seeing her children if she did not comply.   *Id.* at 6–7.   "The remaining Police Officer Defendants[3] met with Ramos" and designed a plan for utilizing Medford as a confidential informant.   *Id.* at 6.   The "Police Officer Defendants" received approval from the "Supervising HPD Defendants"[4] to utilize Medford in this way.   *Id.* at 7.

_____

[2]The First Amended Complaint ("FAC") is almost entirely devoid of time references or dates, making it very difficult to determine when any of the alleged action took place.   *See* Dkt. No. 44.   Fatai's original complaint includes such time references, suggesting that the date omissions in the FAC were intentional.   *See* Dkt. No. 1.

[3]This includes Officers Muraoka, Nahulu, and Sugai.   Dkt. No. 44 at 4.   This lack of specificity about which officers engaged in what conduct is common throughout the FAC.   *See* Dkt. No. 44 at 5–25.   Where an individual defendant is identified, these facts use that Defendant's name.

[4]This includes former Police Chief Louis Kealoha, Sergeant Edgar Namoca, and Lieutenant Mark Kawasaki.   Dkt. No. 44 at 4.   Other than Kealoha, who is alleged to have committed specific acts related to a *different* case, no supervisor is ever specifically identified in the FAC as having committed a particular act in *this* case.   *See id.*

Medford was allegedly unwilling to provide the true identity of her drug supplier.   *Id.* at 8.   Accordingly, although not a defendant herein, she schemed to frame Fatai (or his employer).   Dkt. No. 8–9.   Officers planned a controlled drug buy between Medford and Fatai.   *Id.*   Medford was to meet Fatai in a parking lot and purchase drugs with $1,900 the officers had given her.   *Id.* at 9.   Fatai believed he was meeting Medford to collect a debt she owed to his employer.   *Id.* at 8–11.   Medford did not wear a recording device to the buy and drove her own car.   Neither she nor her vehicle were searched prior to meeting Fatai.   *Id.* at 9.

While officers were in the parking lot where the meeting took place, none could observe the actual interaction between Medford and Fatai.   *Id.* at 10–11. Inside Fatai's car, Fatai asked Medford for the $100 owed to his employer; Medford, rather than paying him, and pursuing her own unrelated agenda, offered him a small baggie of methamphetamine, which Fatai refused.   *Id.* at 11. Allegedly, when Medford left Fatai's car, officers did not observe anything in her possession resembling recently purchased drugs.   *Id.*   As Fatai left the parking lot, he was followed by three officers, including Officer Muraoka.   *Id.*

Fatai was then pulled over and his car and person searched.   *Id.* at 12.   No money or drugs were found.   *Id.*   Meanwhile, Medford drove five miles to a pre-arranged meeting place, during which time she was unobserved by officers.   *Id.* at 12–13.   When officers met with Medford at the meeting place, she presented "a

3

Crystal Light box which contained a Ziploc baggie with approximately two ounces of methamphetamine." *Id.* at 13.   None of the $1,900 was recovered from her. *Id.* at 13–14.

Two days later, again with the approval of the "Supervising HPD Defendants," officers arranged a second controlled buy between Medford and Fatai. *Id.* at 17.   Fatai still believed he was meeting with Medford to collect the $100 debt she owed his employer. *Id.*   This time, officers did not send Medford in to purchase drugs; rather, they detained Fatai as soon as he arrived at the meeting. *Id.* at 18.   Again, his car and person were searched, but no drugs were found. *Id.*   Despite this, he was arrested.[5] *Id.*   Fatai's vehicle was seized and processed for forfeiture due to its alleged use in furtherance of a crime. *Id.* at 19.

According to Fatai, Police Officer Defendants failed to include in their police reports, affidavits, and warrant applications the fact that they had threatened and/or coerced Medford into operating as a confidential informant. *Id.* at 14–17. They also misrepresented how they came to know Medford, and her reliability as an informant in other operations. *Id.*   Supervising HPD Officers, knowing they contained falsities, nonetheless approved of the police reports and affidavits used in support of an indictment. *Id.*

---

[5]Again, because the FAC lacks time references or dates, it is unclear whether Fatai was arrested on the same date as the second controlled buy or sometime thereafter. *See* Dkt. No. 44 at 18.

Fatai was indicted for methamphetamine trafficking.   *Id.* at 20.   He was tried four separate times for this alleged crime.   *Id.* at 21.   The second trial ended in a mistrial, the third in a hung jury, and the fourth, presumably, when the charges were dismissed after Medford refused to testify.[6]   *Id.*   According to Fatai, while his prosecution was ongoing, Police Officer Defendants continued to threaten Medford to get her to testify against him.   *Id.* at 20.   Her testimony at the second trial resulted in "additional conditions [being] placed upon [Fatai's] bond."   *Id.* at 21.   His bond was eventually revoked, and he was subjected to three years of pretrial detention.[7]   *Id.*   Despite the charges having been dropped in January 2018, Fatai's car and other seized items have not been returned.   *Id.* at 21, 24.

Fatai filed his original complaint on December 17, 2019.   Dkt. No. 1.   His original complaint named Medford as a defendant but failed to name Defendants Kawasaki, Nahulu, Namoca, and Sugai.   *Id.* at 1–2.   All Defendants, except Medford, filed motions to dismiss on May 5, 2020.   Dkt. Nos. 14, 15.   Rather than respond to those motions, Fatai, after seeking (and receiving) approval from Defendants' attorney, decided to file an amended complaint.   *See* Dkt. No. 22.   At that time, Fatai represented that he sought to amend the complaint to "reduc[e] the

---

[6]The FAC makes no reference as to the outcome of the first trial.   Dkt. No. 44 at 21.   It is not clear from the FAC whether the outcome of the fourth trial was the charges being dismissed, but it appears to be based on Medford's refusal to testify.

[7]The FAC provides no facts that explain how Medford's testimony at an apparent mistrial led to altered bond conditions or how those bond conditions resulted in Fatai's detention prior to his third trial.   Dkt. No. 44 at 20–21.

number of issues that would have to be addressed at a Motions hearing."   *Id.*
Fatai filed his first amended complaint ("FAC") on September 14, 2020.   Dkt. No.
44.   Rather than "reducing the number of issues," Fatai's FAC adds four
defendants, removes Medford as a defendant, and adds at least six additional
claims.[8]   *Compare id. with* Dkt. No. 1.

On October 19, 2020, Defendants City and County of Honolulu ("Honolulu"
or the "County"), Ramos, and Muraoka filed motions to dismiss the FAC claims
against them, Dkt. Nos. 48, 49; Defendants Kawasaki, Nahulu, Namoca, and Sugai
filed the same on February 3, 2021, Dkt. No. 89.   Defendants' motions
collectively argue that Fatai fails to state a claim either because his claims fail as a
matter of law or because he fails to allege sufficient facts to support his claims.
Further, Honolulu, Kawasaki, Nahulu, Namoca, and Sugai argue claims against
those four Individual Defendants should be dismissed because they were not timely
filed.   The motions have now been fully briefed.   This order follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state
a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   Rule
12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

---

[8]The Court notes *at least six* additional claims because, while some counts are entirely new,
others appear to be just single counts in the original complaint separated into multiple counts in
the FAC.   *See* Dkt. Nos. 1, 44.

statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*

Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id.* at 679.

## **DISCUSSION**

Fatai asserts thirteen counts: nine against all Individual Defendants; an additional count against only the Police Officer Defendants; and three against Honolulu.   Dkt. No. 44 at 25–40.   Six of these counts are brought pursuant to Section 1983 of Title 42 of the United States Code ("Section 1983"), while the

7

other seven are brought pursuant to Hawaiʻi state law.   *Id.*   Fatai brings his claims against Kealoha in both Kealoha's individual and official capacities.   Fatai brings his claims against all other Individual Defendants in their individual capacities only.[9]   *Id.* at 3.

As discussed below, the key issue with Fatai's allegations against the Individual Defendants is that he fails to specify in any way how each Defendant's conduct violated his rights and/or caused him harm.   Alleging the Individual Defendants "conspired", *see* Dkt. No. 72 at 9, is not a means to bypass this pleading defect because it does not place any Defendant on notice of what each has done to justify facing individual liability and the subsequent discovery that comes along with it and because it is quintessentially a "legal conclusion" the Court need not accept as true.   *Iqbal*, 556 U.S. at 678 (2009) (citation omitted).   Many claims suffer from additional defects, as discussed below.   Defendants' motions to dismiss are therefore GRANTED.

---

[9]Fatai states that claims against Individual Defendants, except Kealoha, are brought against them in their individual capacities "unless otherwise noted."   Dkt. No. 44 at 3.   Fatai does not appear to note a single instance in which he brings a claim against those Individual Defendants, other than Kealoha, in their official capacities.   *See id.*   Nonetheless, in generously reading the FAC, his state law claims (Counts VII–X) appear to be against those Defendants in their official capacities because he seeks to hold Honolulu responsible under a theory of *respondeat superior*. *Id.* at 35–40.   If their actions were not taken within the scope of their employment (*i.e.*, official capacity), such a theory would fail as a matter of law.

## I.   <u>Failure to Distinguish Between Defendants</u>

In a nearly 20-page fact statement, Fatai individually names only three Defendants: Ramos, Muraoka, and Kealoha.   Dkt. No. 44 at 5–25.   He uses Ramos' name six times and Muraoka's just once.   *Id.*   The actions specifically attributed to these individuals are limited to the following: Ramos pulled over Medford and enticed and/or threatened her to operate as a confidential informant; Muraoka watched as other officers searched Fatai and his car immediately after Fatai had met with Medford in what officers believed was a controlled buy of methamphetamine; and Kealoha falsified reports to frame an innocent person and intentionally cause a mistrial in a case unrelated to Fatai   *Id.* at 6, 11, 22–23. Fatai attributes the remainder of his factual allegations to groups of Defendants ("group pleading")—either "Police Officer Defendants" or "Supervising HPD Defendants" or sometimes as "Individual Defendants" altogether.

Fatai argues that group pleading in Section 1983 and tort contexts is perfectly acceptable.   Dkt. No. 73 at 3–9.   The Court disagrees.   Fatai must demonstrate that *each* Individual Defendant participated in the deprivation of his rights or in conduct that caused him harm.   *Ashcroft*, 556 U.S. at 676–77; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009).   To do so, Fatai "may not attribute liability to a group of defendants[] but must set forth specific facts as to

each individual defendant's deprivation of his rights."[10]   *Hallal v. Seroka*, 2018 WL 3528709, at *3 (E.D. Cal. July 20, 2018) (citing *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)); *see also Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("[T]here must be a showing of personal participation in the alleged rights deprivation.").[11]

The Ninth Circuit cases Fatai relies on to support a group pleading standard are either inapposite or not helpful to him.   *See* Dkt. No. 72 at 3–4; *see also* Dkt. No. 76 at 3–4.   In *United States v. United Healthcare Ins. Co.*, the Federal Government sued several health insurance providers for defrauding the Government by intentionally committing the same reporting error.   848 F.3d 1161, 1170 (9th Cir. 2016).   The Circuit held that where the plaintiff alleges each defendant engaged in "precisely the same conduct," collective allegations may be appropriate.   *Id.* at 1184.   The court nonetheless held that allegations against several defendants were insufficient due to the plaintiff's "failure to allege particular details of the scheme as applied to [three defendants]."   *Id.*   In other words, though general allegations as to the fraudulent scheme were permissible in the context of that case—*e.g.*, this is how the scheme operated—the plaintiff was

---

[10]If he cannot do so, then naming a particular person as a defendant is likely to run afoul of Fed. R. Civ. P. 11.   Naming a defendant *before* developing the necessary facts is exactly the opposite of how the Federal Rules operate and what they permit.   If and when Fatai develops the necessary facts, he may seek leave to amend the operative complaint and not before then.
[11]To the extent district courts in other Circuits have held otherwise, *see* Dkt. No. 72 at 6–7, the Court is unpersuaded.

still required to allege facts specific to each defendant showing they carried out that scheme—*e.g.*, alleging a particular defendant submitted fraudulent reports on a particular date.[12]

Even if the Court accepts that some collective allegations may be appropriate in the Section 1983 or tort context, Fatai's FAC still fails to sufficiently allege how each Individual Defendant participated in the allegedly unlawful scheme.   In other words, Fatai may choose to generally allege the "scheme" to frame him for drug crimes (like the unlawful reporting scheme in *United Health Care*).   But before he can hold individuals liable for their participation in that scheme, he must credibly allege specific steps taken by each Defendant in the execution of it.   Saying only that Defendants "participated" is legally insufficient to state a claim subjecting a private citizen to personal liability. Other than alleging Muraoka was present when Fatai was stopped after participating in what police believed to be a controlled drug buy, Fatai makes *no* allegations showing how any one Defendant participated in any allegedly rights-depriving act.

Fatai further argues that group pleading is appropriate because "the very nature of some torts prevents plaintiffs from ascertaining which of many individual

---

[12]The other case Fatai cites for this proposition, *Untied States ex rel. Anita Silingo v. WellPoint Inc.*, 904 F.3d 667 (9th Cir. 2018), is not helpful for precisely the same reasons.   Group pleading was acceptable in that case only because "each [defendant] allegedly passed on . . . inflated diagnosis information in the same way."   *Id.* at 678.

defendants is responsible for a very particular act of misconduct."   Dkt. No. 72 at

5.   As Ramos and Muraoka point out, Dkt. No. 76 at 5, Fatai fails to acknowledge

to which torts he is referring.   Moreover, in this context—an arrest and

prosecution—the argument has little salience.   Clearly, a police report reveals who

arrested Fatai, who was involved in that arrest, and how.   Reports also likely

identify those involved with the forfeiture of his property.   While the Court

understands that some internal decisions and deliberations within HPD might not

be known to Fatai, it strains credulity, given the number of times Fatai was

allegedly tried, apparently over the course of seven years, that he would have

almost no idea how and when each Defendant figured into his arrest and

prosecution.   Surely, the procedures surrounding his trials, including criminal

discovery, as well as examination and cross-examination of witnesses, would

reveal at least some of that information.

        Finally, Fatai argues that because he has alleged that the Individual

Defendants conspired to deprive him of his rights and/or harm him, he need not

identify each individual's precise role.   Dkt. No. 72 at 9; *see also id.* at 25–28.

As discussed in more detail below, Fatai has not alleged *facts* that would allow the

Court to conclude the Defendants engaged in an unlawful conspiracy.   *See*

*Twombly*, 550 U.S. at 556 ("a bare assertion of conspiracy will not suffice").

Even if he had, the complaint must plausibly allege that a member of the

conspiracy actually violated Fatai's rights because "conspiracy" cannot stand alone under Section 1983 or as a tort claim.   *See* Dkt. No. 73 at 9 (Fatai admits "personal responsibility is no doubt required to establish liability"); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012 ) ("Conspiracy is not itself a constitutional tort under [Section] 1983.").   Simply put, the FAC is lacking facts that would allow the Court to determine any named Defendant conspired, violated his rights, or engaged in conduct causing him harm.

For this reason alone, all claims against the Individual Defendants are DISMISSED.   Fatai is cautioned that any amended complaint must identify as defendants only persons who personally participated in depriving him of his constitutional rights or who harmed him through tortious conduct.   *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person subjects another to the deprivation of a constitutional right, within the meaning of [S]ection 1983, if he does an act, participates in another's affirmative act, or omits to perform an act he is legally required to do that causes the deprivation of which complaint is made.") (citation omitted); *see also Nelson v. Fox*, 2018 WL 3436808, at *3 (E.D. Cal. July 17, 2018).   As explained below, some claims are DISMISSED WITH PREJUDICE, while others are DISMISSED WITHOUT PREJUDICE and with LEAVE TO AMEND.

## II.    <u>Claims Against Newly Added Defendants</u>

The parties dispute whether Fatai's claims against Defendants Kawasaki, Nahulu, Namoca, and Sugai (the "newly added Defendants") were timely brought.[13]   *See* Dkt. No. 49-1 at 14–19; Dkt. No. 73 at 15–25.   Ultimately, their dispute is over whether the newly added Defendants had notice of the suit before the statute of limitations had run (or 90 days after the suit was filed).   The newly added Defendants represent they did not.   Dkt. No. 49-1 at 14–19; Dkt. No. 77 at 20.   Fatai, for his part, does not represent that they did; rather, he argues that whether they had notice is a factual question not yet ripe for resolution.   Dkt. No. 73 at 15–25.   For the reasons detailed below, the Court agrees with the newly added Defendants that the FAC does not relate back in this instance.

Federal Rule of Civil Procedure 15(c)[14]  provides:

---

[13]Because Kawasaki, Nahulu, Namoca, and Sugai have joined Honolulu's arguments, *see* Dkt. Nos. 88, 89-1 at 2, Fatai's argument that Honolulu lacks standing to raise this argument, Dkt. No. 72 at 15, is moot.

[14]The Court's limits its analysis to the federal rule because it is more lenient than Hawai'i's relation back rule, which reads, in relevant part:

> (c)    Relation back of amendments. An amendment of a pleading relates back to the date of the original pleading when
>
> (1)    relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2)    the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3)    the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and the party to be brought in by amendment
>
> (A)    has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and

14

(c)     Relation Back of Amendments.
    (1)     *When an Amendment Relates Back.*   An amendment to a pleading relates back to the date of the original pleading when:
        (A)     the law that provides the applicable statute of limitations allows relation back;
        (B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
        (C)     the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
            (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and
            (ii)     knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

With regard to adding defendants to an amended filing, a plaintiff must meet a three-part test.   A plaintiff must necessarily show: (1) that the amendment arose out of the same conduct, transaction, or occurrence set forth in the original complaint; (2) that within 90 days of the original complaint being filed, the newly added defendants had notice of it; and (3) the newly added defendants knew or should have known that the action would have been brought against them but for a

---

        (B)     knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Haw. R. Civ. P. 15(c).   While the federal rule allows for notice to occur consistent with Rule 4(m)—i.e., within 90 days of initiation of the suit—Hawaiʻi's rule allows no such flexibility. *See* Dkt. No. 49-1 at 14–19 (Honolulu detailing this distinction).

mistake concerning the proper party's identity.   Fed. R. Civ. P. 15(c); *see also Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 545 (2010).   The plaintiff has "the burden of proving that the proposed defendant had actual or constructive notice of a lawsuit."   *Harlow v. Chaffey Comm. Coll. Dist.*, 2019 WL 6520038, at *2 (C.D. Cal. June 28, 2019) (citation omitted).

The Court assumes, *arguendo*, the first prong is met.   However, Fatai has failed to meet the second and third prongs.   Because Fatai does not represent otherwise, it appears Fatai did not provide the newly added Defendants with *actual* notice of the original complaint when it was filed or within 90 days thereafter. *See* Dkt. No. 73 at 15–25; *see also* Dkt. No. 77 at 14.   Fatai's argument, rather, is that it would be inappropriate at this stage for the Court to determine whether these Defendants had *constructive* notice.   Dkt. No. 73 at 21.   In other words, he needs discovery to find out what each newly added Defendant knew about the suit and when they knew it.   But both the practice of applying the relation back rules and the purpose of statutes of limitations belie his position.

Courts routinely deny leave to amend to add new defendants on the ground that there is no indication the would-be defendants had notice.   *See e.g.*, *Harlow*, 2019 WL 6520038, at *2 (explaining "Plaintiff cannot meet his burden of showing the proposed defendant . . . had actual or constructive notice" because he failed to "allege in his motion or supporting declaration any facts suggesting" they had such

notice).   Courts do so because the purpose of statutes of limitations is to, in part and under certain circumstances, protect would-be defendants from having to bear the time and expense of litigation.   *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1005 (9th Cir. 2014).   While the relation back rules allow flexibility for plaintiffs, they do not wholly undercut this "respected" purpose.   *See id.*   Indeed, the relation back rules serve the "purpose of balancing the defendant's interests protected by the statute of limitations with the preference of the Federal Rules of Civil Procedure in general . . . for resolving disputes on their merits."   *Krupski*, 560 U.S. at 550.

No balancing need be done in this case because Fatai has made no representations that the newly added Defendants had any notice—actual or constructive.   Indeed, he has made no allegations in the FAC or representations in the motion briefing that would allow even an inferential conclusion that they had. *See generally*, Dkt. Nos. 44, 72, 73, 97.   Fatai argues that the Court should simply assume the newly added Defendants had constructive notice: "[i]t takes no stretch of the imagination, and indeed appears likely, that when Kealoha, Ramos, and Muraoka were named, along with a number of Doe Defendants, that [the newly added Defendants] well understand they should have been named as defendants because they worked hand-in-hand with Ramos and Muraoka to prosecute Fatai over the course of seven years and four criminal trials."   Dkt. No. 73 at 22.   It is

17

fortunate the Court's rulings rely, not on imagination, but on the facts (as found or pled) and the law.

Ultimately, Fatai's argument on this point is rife with the same generalized, unspecific, conclusory statements that permeate the FAC.   Like the FAC, his argument contains no *facts* explaining *how* the newly added Defendants worked "hand-in-hand" with Kealoha, Ramos, and Muraoka to investigate and prosecute Fatai.   Even if what Fatai meant by "imagination" was "logical inference," he has not alleged *facts* or made representations allowing the Court to make the inference he wants it to.   The newly added Defendants are not named at all in the original complaint—not as defendants, parties, witnesses or in any factual allegation or count.   Dkt. No. 1.   Neither the original complaint nor the FAC explain the relationship between the newly added Defendants and the Individual Defendants in the original complaint, such that the Court could conclude they even worked together,[15] let alone conspired to frame him for a crime he did not commit.   *See* Dkt. Nos. 1, 44.   And the FAC does not make a single factual allegation detailing what any newly added Defendant did to deprive him of his rights or injure him. *Id.*

---

[15]In March 2020, HPD reported having 1,820 sworn officers.   *About Us*, HPD, (last updated Mar. 2020), https://www.honolulupd.org/about-us/.   Surely, all of these officers do not work together on each case.

Other than his general allegation that the newly added Defendants "conspired" with the Defendants named in the original complaint, Fatai has made no factual allegations allowing the Court to conclude the newly added Defendants had notice—actual or constructive—of the original complaint within 90 days of it being filed. *See* Fed. R. Civ. P. 15(c). Accordingly, the Court finds the claims against the newly added defendants were not timely filed. Because this defect may potentially be cured, the Court DISMISSES all claims against the newly added Defendants WITHOUT PREJUDICE. In any amended complaint, Fatai is instructed to plead facts demonstrating the newly added Defendants had notice of the original complaint within 90 days of it being filed, if he can do so. *See id.*

### III.   42 U.S.C. § 1983 Claims

To establish a Section 1983 claim, a plaintiff must plead "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)) (internal quotation marks omitted). Here, Fatai alleges Defendants engaged in the following:

1.   Detention without probable cause (all Individual Defendants);

2.   Unlawful seizure of personal property (all Individual Defendants);

3.   Due process violations for failure to divulge exculpatory and impeachment evidence and fabricating evidence (all Individual Defendants);

4.   Failure of officers to intervene when they witnessed another officer or officers violating Fatai's rights (Police Officer Defendants); and

5.   Conspiracy to violate the above rights (all Individual Defendants).

Dkt. No. 44 at 25–31.   Fatai alleges the policies and customs of Honolulu, which Kealoha was, at least in part, responsible for, were the cause of these alleged constitutional violations.   *Id.* at 31–35.   Each of Fatai's Section 1983 claims is addressed in turn.

**A.   Claims Against Individual Defendants**

**i.   Detention Without Probable Cause (Count I)**

Fatai's FAC Count I heading reads, in relevant part, "illegal detention and prosecution," suggesting two separate claims: (1) detention absent probable cause; and (2) malicious prosecution.   *See* Dkt. No. 44 at 25.   Fatai has clarified, however, that this count "sets forth a straightforward claim of detention in the absence of probable cause," nothing more.   Dkt. No. 73 at 11–13.   Therefore, the Court addresses only the unlawful detention claim.

Some district courts appear to have tacitly recognized such "detention without probable cause" claims.   *See, e.g.*, *Woods v. City of Reno*, 2020 WL

4194844, at *12–13 (D. Nev. 2020) (explaining that "[s]uch a violation occurs when an officer holds an individual without any reason before the formal onset of a criminal proceeding but it can also occur when legal process itself goes wrong such as when a judge relies solely on a police officer's false statements to decide the issue of probable cause" (citing *Manuel v. city of Joliet*, 137 S. Ct. 911, 918–19 (2017) (internal quotation marks omitted)).   However, given Fatai's factual allegations, there appears to be significant overlap between his detention without probable cause claim and his detained on suppressed or fabricated evidence claims under *Tatum* and *Devereaux*, discussed *infra*.   Thus, Fatai's detention without probable cause claim is DISMISSED WITHOUT PREJUDICE as redundant.   If this claim is intended to be something different, and not redundant, Fatai is granted leave to explain that in an amended complaint.   Moreover, should he attempt to do so, as discussed above, Fatai must make more specific allegations about each Defendant's role in any alleged constitutional offense.

### ii.   Unlawful Seizure of Personal Property

Fatai alleges Defendants (all of them) unlawfully seized his car and improperly subjected it to "forfeiture as a result of drug dealing."   Dkt. No. 44 at 26–27.   The parties primarily dispute when this claim accrued.   Defendants Ramos and Muraoka argue the claim accrued the day the car was seized.   Dkt. No. 48-1 at 10; Dkt. No. 76 at 10–13.   Fatai argues the claim accrued once the charges

against him were dropped. Dkt. No. 72 at 13–15. In support of his position, Fatai argues that because the same alleged "lies" were used to indict and prosecute him as were used to justify the forfeiture action, he could not bring a claim for unlawful seizure of property while his criminal proceeding was ongoing. *Id.* The Court agrees.

In Hawaii, there is a two-year statute of limitations for most Section 1983 claims. *See Pele Def. Fund v. Party*, 837 P.2d 1247, 1259 (Haw. 1992); *see also* HAW. REV. STAT. § 657-7 (2020). In general, if the claim is pursuant to a prosecution, the two-year clock does not start to run until the prosecution ends in a manner favorable to the plaintiff. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156–58 (2019) (citing *Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994)). This is so because of the "pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *Id.* at 2157.

The Court passes no judgment on whether an unlawful seizure of property claim predicated on asset forfeiture may, under different circumstances, accrue prior to the disposition of a related criminal proceeding. But based on the factual allegations before it, the Court finds that Fatai's unlawful seizure claim did not accrue until the termination of the criminal proceeding against him. Holding to the contrary would invite parallel civil and criminal proceedings. Here, for Fatai

to prevail on a Section 1983 unlawful seizure claim, he must necessarily show Defendants had no probable cause to believe he used his car to move and/or distribute drugs.   If a judge or jury in the civil proceeding made such a finding prior to termination of the criminal proceeding, the criminal proceeding would have been undermined, predicated as it was on Fatai's use of his car to move and/or distribute drugs.   Likewise, had Fatai been convicted of the charged crime, the civil suit would be mooted.   *See Heck*, 512 U.S. at 484–85.

Because the Court finds Fatai's unlawful seizure claim timely, it may proceed, but is nonetheless DISMISSED WITHOUT PREJUDICE to enable Fatai to make more specific allegations about which Defendants unlawfully deprived him of his property and how.

### iii.    Due Process Violations (Count III)

Fatai appears to bring two distinct due process claims: (1) failure to disclose exculpatory evidence (*Tatum*); and (2) falsifying evidence (*Devereaux*).   Dkt. No. 72 at 15–24.   Fatai has failed to allege sufficient facts to support a claim under either theory.   Accordingly, both claims are DISMISSED WITHOUT PREJUDICE.[16]

---

[16]The Court does not address a *Brady* theory of liability because it is unnecessary; *Tatum* provides for liability where an officer's failure to disclose exculpatory evidence leads to the continued pretrial detention of a defendant.   *See Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014). Moreover, Fatai appears to argue that he need not rely on a *Brady* theory of liability if the Court recognizes *Tatum* and *Devereaux*.   Dkt. No. 72 at 21–24.

### a.    Failure to Disclose

In *Tatum v. Moody*, the Ninth Circuit explained that a Fourteenth Amendment violation for failure to disclose exculpatory evidence can establish Section 1983 liability when that failure leads to detentions of "(1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks."  768 F.3d 806, 819–20 (9th Cir. 2014).

In *Tatum*, a 27-month detention was considered of "unusual length."  *Id.* at 820.   With regard to the second element, "this sort of due process claim is actually triggered by the failure to disclose evidence that is not merely material but *strongly indicative of the plaintiff's innocence*."  *Id.* (emphasis in original).   In *Tatum*, officers failed to inform a prosecutor and criminal defendant suspected of robberies with a particular modus operandi that additional robberies reflecting that same modus operandi were committed while the defendant was in custody and that another person was arrested in connection with those additional robberies.   *Id.* at 811–13.   Finally, "[i]n the context of a [Section] 1983 suit against police officers for a due process violation, official conduct violates due process only when it shocks the conscience, a standard satisfied in circumstances [where officers] either

24

consciously or through complete indifference disregard[] the risk of an unjustified deprivation of liberty."   *Id.* at 820–21.

Fatai claims the following exculpatory evidence was withheld, leading to a years-long detention: "evidence of coercion and threats made to manipulate witnesses to falsely implicate [Fatai] . . . evidence of deals to incentivize false inculpatory testimony against [Fatai]; [Individual Defendants'] own misconduct in coercing and fabricating evidence and testimony; and that [Individual Defendants] had fabricated police reports and warrant affidavits."   Dkt. No. 44 at 28.   While this information is hardly comparable to the evidence withheld in *Tatum*, the Court, at this time, does not reach the sufficiency of this evidence to find a Section 1983 Fourteenth Amendment violation.

Nonetheless, like the rest of Fatai's claims, he fails to allege sufficient facts to support a claim under *Tatum* because he makes no specific allegations as to any Defendant's role in withholding this information.   Accordingly, Fatai's failure to disclose claim is DISMISSED WITHOUT PREJUDICE.

### b.    Falsifying Evidence

It is "virtually self-evident" that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."   *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).   A plaintiff prevails on a due

process fabrication of evidence claim if he establishes that "(1) the defendant official deliberately fabricated evidence; and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Deliberate fabrication can be shown by either "direct evidence of fabrication" or "circumstantial evidence related to a defendant's motive." *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018). An example of direct evidence of fabrication is "when an interviewer deliberately mischaracterizes witness statements in her investigative report." *Spencer*, 857 F.3d at 793.

Fatai describes the nature of the allegedly fabricated evidence—*e.g.*, officers failed to include in reports how they "coerced and/or influenced" Medford into implicating Fatai, exaggerated as to Medford's credibility and her role in other investigations, and misrepresented how they came into contact with Medford, stating she approached the officers, instead of the reverse. Dkt. No. 44 at 15–21, 28. However, it is entirely unclear how these "fabrications" *caused* Fatai's deprivation of liberty. *Spencer*, 857 F.3d at 798.

According to the FAC, Fatai was subjected to pretrial detention only after his second trial when *Medford* made "up additional false allegations against [him]." Dkt. No. 44 at 20–21. Even if those additional allegations were prompted by Defendants, it appears they led only to additional bond conditions.

26

*Id.* at 21.   There are no facts explaining how testimony at an apparent mistrial resulted in altered bond conditions.   *See id.* at 20–21.   And no facts explaining what the new allegations were or how they were influenced by any Defendant. *See id.*   All Fatai has alleged is that, as a result of Medford's testimony at his mistrial, his bond conditions changed, somehow leading to his detention.   *Id.* That is a far cry from plausibly alleging Defendants *directly caused* his deprivation of liberty by fabricating evidence.

In short, like the rest of his claims, this claim is not supported by sufficient factual allegations.   As such, it is DISMISSED WITHOUT PREJUDICE.

### iv.    Failure to intervene (Count IV)

Defendants argue the duty to intervene does not apply here because the duty is limited to only those instances in which an officer fails to intercede when he witnesses another officer use excessive force.   Dkt. No. 89-1 at 2–5; Dkt. No. 98 at 3–9.   Further, they argue that even if the duty extended to instances in which an officer sees another officer falsify or suppress evidence, such a duty was not clearly established at the time of the alleged misconduct.   Dkt. No. 89-1 at 2–5; Dkt. No. 98 at *Id.*   And even it if were, the FAC fails to allege sufficient facts to sustain a failure to intervene claim.   Dkt. No. 48-1 at 12–13; Dkt. No. 98 at 2–3. Fatai argues that any officer who fails to intervene when he witnesses another officer violating *any* constitutional right can be held personally liable under a

failure to intervene theory.   Dkt. No. 97 at 5–12.   While the Court does not reach the question of whether Police Officer Defendants are entitled to qualified immunity on this count, it finds Fatai has failed to plead sufficient facts to state a failure to intervene claim.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."   *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation and internal quotation marks omitted). "[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede."   *Id.* at 1289.   Even reading the facts in the light most favorable to Fatai, the Court cannot find any Defendant had an opportunity and failed to intervene after witnessing another Defendant (or other officer) violate Fatai's rights.   This is so because, again, Fatai fails to make specific allegations as the Individual Defendants' conduct.   Fatai must make specific allegations showing how each Defendant was aware of a constitutional violation by others and how each Defendant reacted to that information.   Because an amended complaint could potentially include such factual allegations, this claim is DISMISSED WITHOUT PREJUDICE.

### v.   Conspiracy (Count V)

To establish a conspiracy claim under Section 1983, a plaintiff must demonstrate: (1) the existence of an express or implied agreement among the

28

defendant officers to deprive a person of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement.   *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1166 (C.D. Cal. 2007) (citing *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991)).   "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available.   Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."   *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999).   Accordingly, the existence of a conspiracy "is generally a factual issue and should be resolved by the jury, *so long as there is a possibility* that the jury can infer from the circumstances" that a plaintiff has met the elements of the claim.   *Id.* at 1301 (emphasis added).

Here, there are simply *no facts* to directly show or to allow the Court or a jury to infer a conspiracy.   The reason for that is simple: Fatai makes so few specific factual allegations as to what each Defendant did that there is no way for the Court (or a reasonable jury) to infer any one Defendant, let alone all of them, conspired to violate Fatai's rights.   Officer Ramos pulled over Medford, who possessed methamphetamine, and then worked with other officers to get her to implicate a drug supplier.   Dkt. No. 44 at 6.   Sometime later, Officer Muraoka was present while unidentified officers stopped Fatai and searched his vehicle after

29

Fatai participated in what officers believed to be a controlled purchase of methamphetamine from Medford.   *Id.* at 12.

These factual allegations, the only ones specific to Fatai in the FAC, in no way demonstrate that any named Defendant, individually, deprived Fatai of any rights, much less evidence of an explicit or implicit agreement among multiple officers to conspire to violate Fatai's rights.   Because an amended complaint could potentially include such factual allegations, this claim is DISMISSED WITHOUT PREJUDICE.

   B.   *Monell* **Claims (Count VI)**

      i.   **Claims Against Kealoha in his Official Capacity**

Generally, state officials may not be sued in their official capacities under Section 1983 because such suits are equivalent to suits against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007).   Likewise, "[a]n official capacity suit against a municipal officer is equivalent to a suit against the entity."   *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).   There is "one vital exception" to this general rule: when state officials are sued for prospective injunctive relief, a Section 1983 suit against them in their official capacities may lie.   *Flint*, 488 F.3d at 825 (citing *Will*, 491 U.S. at 71 n.10).

30

Because Fatai seeks only monetary relief, *see* Dkt. No. 44 at 39–40, and Honolulu is already a separately named defendant, Fatai's Section 1983 claims against Kealoha in his official capacity are DISMISSED WITH PREJUDICE.   *See Ctr. for Bio-Ethical Reform, Inc.*, 533 F.3d at 799 (explaining that when the suit is against both the municipality and the officer in his official capacity, the officer is a "redundant defendant").

## ii.    Claims Against Honolulu

Fatai appears to refuse to accept settled law in the Ninth Circuit with regard to when a municipality may be held liable under Section 1983 for its officers'/employees' conduct.   Dkt. No. 73 at 3–15.   As this Circuit has recently explained:

> A local government is liable for an injury under [Section] 1983 under ***three possible theories***.   ***First***, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury.   ***Second***, a local government can fail to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.   ***Third***, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018) (emphasis added) (internal quotation marks and citations omitted).

31

Fatai is correct that he is not required to "plead or allege specific legal theories."   Dkt. No. 72 at 5.   However, to survive a Rule 12(b)(6) motion, while the theory itself need not be identified, facts supporting a cognizable theory must be.   The Court addresses, in turn, each theory of Section 1983 municipal liability recognized by the Ninth Circuit.

### a.      Policy or Custom

For Honolulu to be liable under a policy or custom theory, Fatai must establish that an HPD policy, custom, or practice was the "moving force" behind the alleged violation of his rights.   *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   "[A] plaintiff may prove 'the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.'"   *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)).   Fatai argues the FAC supports claims that official *and* unofficial (or "de facto") policies and customs led to the violation of his rights.   As explained below, neither is true.

In his motion, Fatai attempts to characterize the FAC as attacking, in part, official HPD policies.   *See* Dkt. No. 73 at 6–10.   But this argument is at odds with the FAC, which acknowledges HPD's "strict protocols" for working with informants and carrying out controlled buys and, instead, alleges officers failed to

32

adhere to these strict policies.   *See* Dkt. No. 44 at 7 ("Defendants knew that

working with an informant in a drug case requires strict protocol"); *id.* at 14

(explaining that the first controlled buy was in contravention of "standard

undercover narcotic police practice contained in the Honolulu Police Department's

Narcotics/Vice Narcotics Operational Plan").   Accordingly, the Court finds Fatai's

FAC does not support a claim that *official* HPD policy was the moving force

behind the violation of his rights.

Fatai also claims HPD employed several de facto policies or customs that

resulted in the violation of his rights: (1) "permit[ting] officers to present false

evidence in support of criminal charges"; (2) "encourag[ing] certain witness[es],

like Medford, to intentionally cause mistrials"; and (3) using asset forfeiture to

generate profit rather than for legitimate law enforcement purposes.   *Id.* at 21–24.

As evidence of these de facto policies, Fatai points to Kealoha fabricating evidence

and causing a mistrial *in a single other case*.   *Id.*   He also points out that HPD

accounted for a high percentage of all asset forfeitures in the state between 2001

and 2014.   *Id.* at 23.

These allegations, even if accepted as true, "fall far short of alleging any

'informal policy' or 'widespread practice' sufficient to survive the instant motion."

*See Franson v. City and Cty. of Honolulu*, Civil No. 16-00096-DKW-KSC, 2020

WL 4007549, at *6 (D. Haw. July 26, 2016) (citing *Hunter v. Cty. of Sacramento*,

652 F.3d 1225, 1234 (9th Cir. 2011)).   Pointing to a single instance (or two) of misconduct is insufficient.   *See Navarro*, 72 F.3d at 714 ("Proof of random acts or isolated events is insufficient to establish custom.").   *Repeated* violations of the same ilk are necessary.   *Id*.   Because Fatai has failed to allege facts demonstrating that the alleged unofficial policies are so widespread as to constitute the de facto policies of the HPD, he has failed to state a claim under a policy or custom theory of *Monell* liability.

### b.     Failure to Train

Municipal liability may only be imposed for failure to train when that failure "reflects a 'deliberate' or 'conscious' choice by a municipality."   *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).   Further, failure to train claims "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."   *Id.* at 392.   Given these principles, a plaintiff seeking to impose municipal liability for failure to train must show: "(1) an inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training actually caused a deprivation of [a plaintiff's] constitutional rights."   *Merritt v. County of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002)

(setting forth a similar three-prong test); *Wereb v. Maui Cty.*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010).

Municipal liability may be imposed when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. Deliberate indifference may be shown through a "pattern of tortious conduct by inadequately trained employees" or where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997).

Fatai's failure to train allegations come nowhere close to satisfying these standards. Without any factual predicate, Fatai alleges "Honolulu failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the training and supervision of officers and agents of the [HPD]" with respect to a host of investigative techniques and disclosure requirements. *See* Dkt. No. 44 at 32. He alleges no facts demonstrating an "obvious" need for different (or additional) training, *see Canton*, 489 U.S. at 390, and no "pattern of tortious conduct" that could lead to even an inference that HPD policymakers were implicitly aware of such a need, *see Brown,* 520 U.S. at 407–

09.   Finally, there are no facts to suggest that, even if such a need existed, any policymaker was deliberately indifferent to it.   Accordingly, Fatai has failed to allege facts to state a plausible claim under a failure to train theory of *Monell* liability.

### c.   Ratification

Under a ratification theory, Fatai "must show the decision [by a policymaker] was the product of a conscious, affirmative choice to ratify the conduct in question.   Such a ratification 'could be tantamount to the announcement or confirmation of a policy for purposes of *Monell*.'"   *Edenfield v. Estate of Willets*, 2006 WL 1041724, at *16 (D. Haw. Apr. 14, 2006) (quoting *Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *reversed on other grounds by Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)); *see also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification requires proof of a policymaker's knowledge of the alleged constitutional violation); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (ratification requires an adoption and express approval of the acts of others who caused the constitutional violation).   An official policymaker must "make a deliberate choice from among various alternatives to follow a particular course of action."   *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).   A mere failure "to overrule the unconstitutional discretionary acts of subordinates[,]" without expressly endorsing or approving of the conduct, is an

insufficient predicate for the imposition of liability against the municipality. *Gillette*, 679 F.2d at 1348.

Fatai alleges that "the final policy makers for Honolulu[17] approved of, adopted, and therefore ratified the actions of the Individual Defendants."   Dkt. No. 44 at 35.   The factual allegations to support this conclusion are nonexistent. Without any factual predicate, the FAC simply repeats several times that the Police Officer Defendants' conduct was "approved" by the Supervising HPD Defendants. *Id.* at 7, 10, 14, 19–20, 24–25.   Precisely what conduct the Supervising HPD Defendants approved of, how and when they did so, how much they knew when deciding to do so, and for what purposes appear nowhere in the FAC.   *See id.*

Given the absence of specific factual allegations, there is no support for a finding that any policymaker deliberately chose to endorse any Individual Defendant's conduct and the basis for it.   *See* Dkt. No. 44.   Moreover, there are no facts to even suggest the alleged policymakers were aware of the alleged misconduct.   *Id.*; *see also Iqbal,* 556 U.S. at 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

---

[17]Honolulu argues that none of the named Defendants, including Kealoha, were final policymakers under state law, or, at the very least, that Fatai failed to make any allegations demonstrating otherwise.   Dkt. No. 49-1 at 9.   The Court does not reach the question of whether Kealoha, Namoca, and/or Kawasaki are final policymakers for purposes of *Monell* liability, though it appears that, under certain circumstances, a chief of police certainly could be.

Because Fatai has failed to allege sufficient facts demonstrating a policymaker deliberately ratified the rights-depriving acts of any Individual Defendant, he has failed to state a claim under a ratification theory of *Monell* liability.

### d.    Summary of Section 1983 Claims against Honolulu

In short, Fatai has failed to plead facts sufficient to state a claim under any theory of *Monell* liability.   As this defect can potentially be cured, his Section 1983 claim against Honolulu (Count VI) is DISMISSED WITHOUT PREJUDICE.

## IV.   State Law Claims

### A.    Claims Against Individual Defendants

"Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after. . . ."   HAW. REV. STAT. § 657-7; *see also Silva v. City and Cty .of Honolulu*, 165 P.3d 247 (Haw. 2007).   According to the FAC, charges against Fatai were dropped in January 2018.   Dkt. No. 44 at 21.   Therefore, January 2018 is the latest possible time that Defendants could have committed any of the alleged tortious acts against him.   Indeed, he brings claims of malicious prosecution and abuse of process, as well as claims that those torts caused him emotional distress. *Id.* at 35–38.

Fatai's original complaint did not include any state law claims.   Dkt. No. 1.

Fatai first brought those claims in the FAC on September 14, 2020, long after the

two-year statute of limitations had run.   Dkt. No. 44.   The analysis, however,

does not end there.   As the Ninth Circuit has explained:

> An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading. Under [Federal] Rule [of Civil Procedure] 15(c)(1)(B), an amendment asserting a new or changed claim relates back to the date of the original pleading if the amendment "arose out of the conduct, transaction, or occurrence set out ... in the original pleading."   An amended claim arises out of the same conduct, transaction, or occurrence if it "will likely be proved by the 'same kind of evidence' offered in support of the original pleading." *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988) (quoting *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966)).   To relate back, "the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *Martell*, 872 F.2d at 325.   The relation back doctrine of Rule 15(c) is "liberally applied." *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1259 n. 29 (9th Cir. 1982).

*ASARCO*, 765 F.3d at 1004.

It is evident that the original complaint and FAC "share a common core of

operative facts" such that Defendants Muraoka, Ramos, and Kealoha had "fair

notice of the transaction, occurrence, or conduct called into question."   *Clipper*

*Exxpress*, 690 F.2d at 1259 n.29.   In fact, it seems obvious on the face of the

original complaint that common law malicious prosecution and/or abuse of process

claims might be brought.   *See* Dkt. No. 1 at 6–22.

However, Fatai fails to allege sufficient facts to demonstrate any single Defendant (or a group of them) committed a tort against him.   His allegations, generalized as they are, make it impossible for any Defendant to know what they are defending against and, as such, are legally deficient.   *See* Fed. R. Civ. P. 12(b)(6).   In short, Fatai must credibly allege *facts* demonstrating *how* each Defendant caused him harm.   If he alleges their actions were part of a conspiracy, he must allege facts that would allow the Court to find or infer an agreement between the parties to cause him injury.   Such facts might be, but are not limited to, each Defendant's actions in carrying out specific aspects of the conspiracy.

While apparently timely then, Fatai's state law claims against the individual defendants (Counts VII–XI) are nonetheless DISMISSED WITHOUT PREJUDICE.

### B.    Claims against Honolulu

The parties dispute whether Hawai'i Revised Statute § 46-72 ("HRS § 46-72") precludes Honolulu's liability for Fatai's tort claims.   As explained below, the Court cannot say from the face of the FAC whether Fatai complied with HRS § 46-72.   Nonetheless, because his tort claims against Honolulu hinge on his tort claims against Honolulu's employees/agents, his tort claims against the County are likewise DISMISSED WITHOUT PREJUDICE.

HRS § 46-72 reads as follows:

> Before the county shall be liable for damages to any person for injuries to person or property received upon any of the streets, avenues, alleys, sidewalks, or other public places of the county, or on account of any negligence of any official or employee of the county, the person injured, or the owner or person entitled to the possession, occupation, or use of the property injured, or someone on the person's behalf, within two years after the injuries accrued shall give the individual identified in the respective county's charter, or if none is specified, the chairperson of the council of the county or the clerk of the county in which the injuries occurred, notice in writing of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed.

Section 13-111 of the Honolulu County Charter in turn provides:

> No action shall be maintained for the recovery of damages for any injury to persons or property by reason of negligence of any official or employee of the city unless a written statement, stating fully when, where and how the injuries occurred, the extent thereof and the amount claimed therefor, has been filed with the corporation counsel within six months[18] after the date the injury was sustained.

As this Court has explained, HRS § 46-72 applies to negligence as well as intentional tort claims against a county. *Nakamoto v. Cty. of Hawaii*, 2018 WL 2750224, at *4 (D. Haw. July 7, 2018).

Honolulu insists Fatai has failed to comply with HRS § 46-72 because he "did not file written notice with Corporation Counsel" within the two-year period allowed by the statute. Dkt. No. 49-1 at 13. Fatai does not contend that he

---

[18]This six-month limit remains in the Charter, but the Hawaiʻi Supreme Court has clarified the two-year statute of limitations in HRS § 46-72 controls. *Silva v. City and Cty. of Honolulu*, 165 P.2d 247, 260 (Haw. 2007).

provided such notice.   Rather, he argues that this is a question of fact rendering the issue not yet ripe for resolution.   Dkt. No. 73 at 27–28.   In the alternative, he argues that by serving the original complaint on Honolulu within the two-year period allowed, he has complied with the statute.   *Id.* at 29.   The Court agrees with Fatai on the former point, but not the latter.

To support its argument that Fatai failed to comply with HRS § 46-72, Honolulu submitted a declaration from Tammy Chee, an employee of Honolulu's Corporation Counsel's Office with access to that office's records.   Dkt. No. 48-2. Chee represents that "a diligent search of all written claims" submitted to the Corporation Counsel's office "failed to disclose any written notice of a claim made against the City and County of Honolulu or its employees by Plaintiff Sefo Fatai." *Id.* at 2.   Fatai argues the Court should "entirely ignore" this declaration at the motion to dismiss stage.   The Court agrees that it must do so.

"When reviewing a motion to dismiss, [the Court] 'consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."   *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)); *accord Bd. of Trustees of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106, 1114 (N.D. Cal. 2016) (explaining a court may not consider declarations or exhibits in ruling on a

Defendant's motion to dismiss).   The information contained in Chee's declaration, while no doubt important, expedient, and potentially dispositive, is none of these things at this stage of the litigation.   The Court cannot consider the Chee declaration in determining whether Fatai complied with HRS § 46-72 until and unless a summary judgment motion is presented.

Without the Chee declaration, and with only the FAC to rely on, it remains unclear whether Fatai complied with HRS § 46-72.   What is clear is that serving the original complaint on Honolulu is insufficient to comply with the statute's notice requirement.   "The purpose of protecting the public fisc from fraudulent claims justifies the imposition on victims of governmental torts a more onerous requirement of prompt notice of claims than on victims of private torts." *Salavea v. City & Cty. of Honolulu*, 55 Haw. 216, 223, 517 P.2d 51, 56 (1973) (Levinson, J., concurring in part), *overruled on other grounds by Kahale v. City & Cty. of Honolulu*, 104 Haw. 341, 90 P.3d 233 (2004).   Finding a complaint sufficient to satisfy HRS § 46-72's notice requirement would undermine this purpose and equally undermine a second purpose behind the statute—affording the governmental agency an opportunity to resolve a claim before incurring the time and expense of litigation.

Further, the general torts statute requires a would-be plaintiff to initiate a suit no later than two years after a claim accrues.   HAW. REV. STAT. § 657-7.   HRS

43

§ 46-72 imposes an *additional* notification requirement on a would-be plaintiff alleging a governmental tort.   If the Court allowed a complaint to serve as notice to the County, it would necessarily dispose of this additional requirement and collapse the two statutes into one.   The Court declines to do so.

While HRS § 46-72 does not compel dismissal of Fatai's tort claims at this stage of the litigation, his failure to allege sufficient facts to state a tort claim against any Individual Defendant, discussed *supra*, does compel such a result.   To establish *respondeat superior* liability, a plaintiff must necessarily establish liability on the part of an employee or agent of the organization or entity.   *See McCormack v. City and Cty. of Honolulu*, 2014 WL 692867, at *2–3 (D. Haw. Feb. 20, 2014).   "It follows that a claim for *respondeat superior* cannot survive without an underlying tort claim against an employee."   *Id.* at 2–3.   Accordingly, because Fatai's tort claims against the individual defendants, *see supra* at 38–40, are dismissed, his tort claims against Honolulu are likewise DISMISSED WITHOUT PREJUDICE.[19]

---

[19]The Court, however, agrees with the Government that "indemnification" is not a cognizable claim in Hawaii and that the cases Fatai cites allowing indemnification claims do so pursuant to specific statutes allowing for them.   *See* Dkt. No. 77 at 22–23.   Accordingly, Fatai's indemnification claim (Count XIII) is DISMISSED WITH PREJUDICE and may not be refiled as part of any amendment.

## V.   <u>Doe Defendants</u>

Doe Defendants are generally disfavored.   *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980).   There is no point to including Doe Defendants because they cannot be served and add nothing actionable to this litigation.   If and when Fatai discovers both the identities of additional persons who have violated his rights and the facts surrounding such violations, he may seek leave to amend the operative complaint.   In fact, having litigated much of the same set of facts over seven years and four criminal trials in state court, it is difficult to believe that the necessary facts are not already in his possession.   Fatai's claims against the Doe Defendants are DISMISSED.

## <u>CONCLUSION</u>

Defendants' motions to dismiss, Dkt. Nos. 48, 49, and 89, are GRANTED. The following are DISMISSED WITH PREJUDICE and may not appear in an amended filing:

1.   All claims against Kealoha in his official capacity;

2.   All claims against Doe Defendants; and

3.   Indemnification claim (Count XIII).

All other claims are DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND.   Any amended filing must comply with the instructions and rulings laid out in this order.   Fatai must file any amended complaint **by no later than**

**April 7, 2021**.   If he fails to do so, this matter will be dismissed without further notice.

     IT IS SO ORDERED.

     Dated: March 18, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Sefo Fatai v. City and County of Honolulu, et al.*; Civil No. 19-00630-DKW-WRP; **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH PARTIAL LEAVE TO AMEND**