# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SEFO FATAI,<br><br>         Plaintiff,<br><br>     v.<br><br>CITY AND COUNTY OF<br>HONOLULU, *et al.*,<br><br>         Defendants. | Case No. 19-cv-00603-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

Before the Court are two motions to dismiss the Second Amended Complaint ("SAC"), filed on behalf of the City and County of Honolulu ("Honolulu" or "County") and Defendants Mark Ramos, Fumikazu Muraoka, Edgar Namoca, Joshua Nahulu, Boyce Sugai, and Mark Kealoha[1] (the "Individual Defendants," and, collectively with Honolulu, "Defendants").[2]  Defendants argue that the SAC—which alleges the Individual Defendants conspired to falsely arrest and prosecute Plaintiff Sefo Fatai for drug crimes he did not commit—fails to state

---

[1]Although Mark Kealoha was not a party to the Individual Defendants' motion to dismiss when filed, *see* Dkt. No. 105, the parties subsequently stipulated to allow him to join the motion and its attendant arguments, Dkt. No. 126.

[2]The Court notes that previously named Defendants Police Chief Louis Kealoha and Lieutenant Mark Kawasaki are no longer named as Defendants.  *Compare* Dkt. No. 44 *with* Dkt. No. 101. In addition, the SAC names Defendant Mark Kealoha for the first time.  *Compare* Dkt. Nos. 1, 44 *with* Dkt. No. 101.

a claim against them. As explained below, Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.

## RELEVANT BACKGROUND

In 2011, Honolulu Police Officers Ramos, Muraoka, Nahulu, Sugai, and Mark Kealoha worked in District 8 of the Narcotics Division of the Honolulu Police Department (HPD), and, as a team, conducted controlled buys and other drug-related investigations. Dkt. No. 101 at ¶¶ 17, 18. Officer Namoca supervised the group of officers. *Id.* at ¶ 8.

A few days before August 24, 2011, Officer Ramos pulled over a woman named Kristine Medford for an unspecified driving violation. *Id.* at ¶ 28. Medford possessed methamphetamine. *Id.* at ¶ 30. Officer Ramos determined to flip Medford; that is, to have her implicate someone else in the drug trade in exchange for possible favorable treatment in the criminal justice system. *Id.* at ¶¶ 30, 31. Ramos and possibly other police officers also allegedly threatened to prevent Medford from seeing her children if she did not comply. *Id.* at ¶ 39. On August 24, 2011, Officer Ramos met with Officers Muraoka, Nahulu, Sugai, and Mark Kealoha to design a plan for utilizing Medford as a confidential informant. *Id.* at ¶ 32. This plan was approved by Officer Namoca. *Id.*

Medford was allegedly unwilling to provide the true identity of her drug supplier. *Id.* at ¶ 45. Accordingly, although not a defendant herein, she schemed

to frame Fatai.  *Id.* at ¶¶ 45–48.   Officers planned a controlled drug buy between

Medford and Fatai.  *Id.* at ¶¶ 46–52.   Medford was to meet Fatai on August 24,

2011 in a Chuck E. Cheese parking lot and purchase drugs with $1,900 the officers

had given her.  *Id.* at ¶¶ 59–61.   Fatai believed he was meeting Medford to collect

a debt she owed to his employer.  *Id.* ¶¶ 48, 68, 74.   Medford did not wear a

recording device to the buy and drove her own car.  *Id.* at ¶¶ 57, 58.   Neither she

nor her vehicle was searched prior to the rendezvous.  *Id.* at ¶¶ 56, 57.

   While the officers were in strategic locations near the Chuck E. Cheese,

none could observe or hear the actual interaction between Medford and Fatai.  *Id.*

at ¶¶ 62, 71, 72.   Inside Fatai's car, Fatai asked Medford for the $100 owed to his

employer; Medford, rather than paying him, and pursuing her own unrelated

agenda, offered him a small baggie of methamphetamine, which Fatai refused.  *Id.*

at ¶¶ 74–76.   Allegedly, when Medford left Fatai's car, officers did not observe

anything in her possession resembling recently purchased drugs.  *Id.* at ¶ 78.   As

Fatai left the parking lot, he was followed by three officers, including Officer

Muraoka.  *Id.* at ¶ 82.

   Fatai was then pulled over and his car and person searched.  *Id.* at ¶¶ 89–94.

No money or drugs were found.  *Id.* at ¶¶ 93, 94.   Meanwhile, Medford drove five

miles to a pre-arranged meeting place, during which time she was unobserved by

officers.  *Id.* at ¶¶ 96, 97.   When officers met with Medford at the meeting place,

she presented "a Crystal Light box which contained a clear Ziploc baggie with approximately two ounces of methamphetamines." *Id.* at ¶ 103. While the drugs were catalogued as evidence, the Crystal Light box was not and was later destroyed. *Id.* at ¶ 104. None of the $1,900 was recovered from Medford. *Id.* at ¶ 111.

On August 26, 2011, officers arranged a second controlled buy between Medford and Fatai. *Id.* at ¶ 128. Fatai still believed he was meeting with Medford to collect the $100 debt she owed his employer. *Id.* at ¶ 133. This time, officers did not send Medford in to purchase drugs; rather, they detained Fatai as soon as he arrived at the meeting location. *Id.* at ¶ 134. Again, his car and person were searched, but no drugs were found. *Id.* at ¶ 139. Despite this, he was arrested. *Id.* at ¶ 136. Fatai's vehicle was seized and processed for forfeiture due to its alleged use in furtherance of a crime. *Id.* at ¶ 162.

According to Fatai, Officers Ramos, Muraoka, Nahulu, and Kealoha failed to include in their police reports, affidavits, and warrant applications the fact that they had threatened and/or coerced Medford into operating as a confidential informant. *Id.* at ¶¶ 121–124, 145–154. They also misrepresented how they came to know Medford, and her reliability as an informant in other operations. *Id.* Supervising HPD Officers, knowing they contained falsities, nonetheless approved

the police reports and affidavits used in support of Fatai's arrest and indictment. *Id.*

Fatai was indicted for methamphetamine trafficking, *id.* at ¶ 163, for which he was tried four times. *Id.* at ¶ 168, 173. Two of the trials ended in a mistrial, while the fourth attempt ended with the dismissal of the charges after Medford did not appear.[3] *Id.* Even though the charges were dropped in January 2018, Fatai's car and other seized items have not been returned. *Id.* at ¶ 196.

Fatai was incarcerated for roughly three years during the course of these prosecutions, although he provides no facts explaining why. *Id.* at ¶ 164. Defendants Ramos, Nahulu, Sugai, Mark Kealoha, and Muraoka testified against Fatai throughout. *Id.* at ¶ 167. While his prosecution was ongoing, Officers continued to entice and threaten Medford to get her to testify against Fatai. *Id.* at ¶ 171.

Fatai filed his original complaint on December 17, 2019. Dkt. No. 1. His original complaint named Medford as a defendant but failed to name Defendants Kawasaki, Nahulu, Namoca, Sugai, and Mark Kealoha.[4] *Id.* at 1–2. All

_____

[3] The SAC makes no reference as to the outcome of the remaining trial. Dkt. No. 101 at ¶¶ 168, 173.

[4] The original complaint named former Honolulu Police Chief, Louis Kealoha, as a defendant. Dkt. No. 1 at 3. It is clear from the pleadings in this case that Fatai did not simply mistake Officer Mark Kealoha for former Police Chief Louis Kealoha. *See id.* (explaining that the Defendant he sought to bring claims against was "LOUIS KEALOHA" who was "the Chief of the Honolulu Police Department at all times relevant" to the complaint).

Defendants, except Medford, filed motions to dismiss on May 5, 2020. Dkt. Nos. 14, 15. Rather than respond to those motions, Fatai opted to file an amended complaint. *See* Dkt. No. 22. Fatai filed his first amended complaint ("FAC") on September 14, 2020, which added four defendants, removed Medford as a defendant, and added at least six additional claims. *Compare* Dkt. No. 44 *with* Dkt. No. 1. On October 19, 2020, Defendants Honolulu, Ramos, and Muraoka filed motions to dismiss the FAC, Dkt. Nos. 48, 49; Defendants Kawasaki, Nahulu, Namoca, and Sugai filed the same on February 3, 2021, Dkt. No. 89. On March 18, 2021, this Court granted Defendants' motions to dismiss with partial leave to amend. Dkt. No. 99.

On April 7, 2021, Fatai filed his SAC, which removed Lieutenant Mark Kawasaki and Louis Kealoha as defendants and added Officer Mark Kealoha. Dkt. No. 101. On April 21, 2021, Honolulu filed a motion to dismiss the SAC, Dkt. No. 104, as did Defendants Ramos, Muraoka, Namoca, Nahulu, and Sugai, Dkt. No. 105. On July 12, 2021, the parties stipulated to allow Defendant Mark Kealoha to, in essence, join the other Individual Defendants' motion. Dkt. No. 126. Defendants' motions collectively argue that Fatai fails to state a claim either because his claims fail as a matter of law or because he fails to allege sufficient facts to support them. Further, Defendants collectively argue that claims against Officers Namoca, Nahulu, Sugai, and Mark Kealoha should be dismissed because

they were not timely filed.   The motions have now been fully briefed.   *See* Dkt.

Nos. 116, 117, 120, 122, 123.   This order follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state

a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   Rule

12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ.

P. 8(a)(2).   Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In addition, "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions."   *Id.*

Accordingly, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*,

550 U.S. at 555).   Rather, "[a] claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S.

at 556).   Factual allegations that only permit the court to infer "the mere

possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id*. at 679.

## DISCUSSION

Fatai asserts twelve counts: nine against all Individual Defendants; an additional count against all Individual Defendants except Namoca; and two against Honolulu. Dkt. No. 101 at ¶¶ 210–278. Six of these counts are brought pursuant to Section 1983 of Title 42 of the United States Code ("Section 1983"), while the other six are brought pursuant to Hawai'i state law. *Id.* Fatai brings his claims against Defendants Ramos, Muraoka, Nahulu, Sugai, and Mark Kealoha "in their individual capacities for actions taken under color of law and within the scope of employment for the City and County of Honolulu." Dkt. No. 101 at ¶ 6. Though not clearly stated, it appears Fatai brings his claims against Defendant Namoca in the same manner. *Id.* at ¶ 8.

As discussed below, the following claims are dismissed with prejudice:

    1.    All claims against Defendants Namoca, Mark Kealoha, Nahulu, and Sugai because they were not timely brought, and Fatai has failed to demonstrate these Defendants were on actual or constructive notice of the suit prior to them being named as defendants.

2.	Count I (detention absent probable cause) because this is not a distinct, recognized claim requiring different proof from Count III and is therefore redundant.

3.	Count IV (failure to intervene) because, in this context, the Court finds there was no clearly defined duty to intervene.

4.	Count V (conspiracy) because the Individual Defendants are entitled to qualified immunity on this claim.

5.	Count VI (*Monell* claims against Honolulu) because Fatai has failed to allege sufficient facts demonstrating that a *de facto* policy or failure to train was the cause of any alleged constitutional violation or that any unconstitutional conduct was ratified by a policymaker with final authority.

The remaining Counts (*i.e.*, II, III, and VII–XII) survive this order. Nonetheless, while the Court cannot at this procedural juncture consider outside evidence in deciding whether Fatai complied with state law in notifying Honolulu prior to bringing his state law claims, he has still failed to credibly allege having done so, despite multiple opportunities and in the face of evidence to the contrary. Accordingly, some of the surviving claims appear susceptible to summary judgment.

# I.    **Claims Against Newly Added Defendants**

Defendants Mark Kealoha, Nahulu, Namoca, and Sugai ("newly added Defendants") were not named defendants in Fatai's original complaint.   *See* Dkt. No. 1.   Defendants Nahulu, Namoca, and Sugai were first named as defendants in Fatai's FAC on September 14, 2020, and Mark Kealoha was first named as a defendant in the SAC on April 7, 2021.   Dkt. Nos. 44, 101.   As even the earlier of these two dates exceeds the state's statute of limitations for Section 1983 and state law injury claims,[5] Fatai must adequately show, *inter alia*, that the newly added defendants were on notice of the original complaint within 90 days of its filing. As explained below, because he has failed to do so, the claims against the newly added defendants are DISMISSED WITH PREJUDICE.

Federal Rule of Civil Procedure 15(c)[6] provides:

> (c)    Relation Back of Amendments.
> > (1)    *When an Amendment Relates Back.*   An amendment to a pleading relates back to the date of the original pleading when:
> > > (A)    the law that provides the applicable statute of limitations allows relation back;

---

[5]*See Pele Def. Fund v. Paty*, 837 P.2d 1247, 1259-61 (Haw. 1992) (explaining HAW. REV. STAT. § 657-7 applies to Section 1983 claims brought in Hawaiʻi); HAW. REV. STAT. § 657-7 (establishing a two-year statute of limitations for "[a]ctions for recovery of compensation for damage or injury to persons or property").   The Court has previously explained that January 2018, when the state charges against Fatai were dropped, is the "latest possible time that Defendants could have committed any of the alleged" unconstitutional or tortious acts against him.   Dkt. No. 99 at 38.   The filing of the FAC in September 2020 then, first naming the aforementioned individual defendants, clearly occurred more than two years later.
[6]The Court has previously explained that it "limits its analysis to the federal rule because it is more lenient than Hawaiʻi's relation back rule," and will not repeat that analysis here.   *See* Dkt. No. 99 at 14–15 n.13.

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

With regard to adding defendants to an amended filing, a plaintiff must necessarily show: (1) that the amendment arose out of the same conduct, transaction, or occurrence set forth in the original complaint; (2) that within 90 days of the original complaint being filed, the newly added defendants had notice of it; and (3) the newly added defendants knew or should have known that the action would have been brought against them but for a mistake concerning the proper party's identity. Fed. R. Civ. P. 15(c); *see also Krupski v. Costa Crociere S.P.A.*, 560 U.S. 538, 545 (2010). The plaintiff has "the burden of proving that the proposed defendant had actual or constructive notice of a lawsuit." *Harlow v. Chaffey Comm. Coll. Dist.*, 2019 WL 6520038, at *2 (C.D. Cal. June 28, 2019) (citation omitted).

The Court assumes, *arguendo*, the first prong is met. However, Fatai has failed to meet the second and third prongs. Fatai does not allege he or anyone else

provided the newly added Defendants with *actual* notice of the original complaint when it was filed or within 90 days thereafter.[7] *See* Dkt. No. 117 at 17–23. Instead, Fatai makes three arguments. First, he argues he has alleged sufficient facts to show the newly added defendants had constructive notice of the suit. *Id.* at 17–21. Second, he argues that, at minimum, he has alleged sufficient facts such that the notice question remains a genuine issue of fact not ripe for resolution on a motion to dismiss. *Id.* at 18–21. Finally, he argues that equitable considerations favor tolling of the statute of limitations. *Id.* at 21-23. None of these are persuasive.

Fatai offers several facts that he believes demonstrate the newly added Defendants were likely on constructive notice of his suit when filed (or within 90 days thereafter): (1) Defendants Nahulu, Sugai, and Mark Kealoha were "participants in a small unit of the HPD" in 2011, and Namoca was supervisor of that unit; (2) the newly added Defendants were aware of and participated in the multiple trials against Fatai and knew when the charges against him were dropped; (3) there was news coverage of Fatai's suit around when it was filed; and (4) the newly added Defendants are represented by Corporation Counsel, who also

---

[7]The Court accepts Fatai's representation that he "does not personally know whether the officers, as a matter of fact had personal knowledge of the suit" as an admission that he cannot allege *actual* notice. *See* Dkt. No. 117 at 19.

represents Defendants Ramos and Muraoka (who were named in the original complaint). *Id.* at 17–18; *see also* Dkt. No. 101 at 40–43.

None of these allegations is convincing. First, that the newly added Defendants participated in the operations resulting in Fatai's arrest and prosecution and testified at Fatai's several trials provides no evidence as to whether they were aware of *this civil suit*.[8] Moreover, other than a conclusory statement, Fatai makes no *factual allegations* that the newly added Defendants were aware of the charges against him being dropped. *See* Dkt. No. 101 at 40-43; Dkt. No. 117 at 17–23. After all, prosecutors, not police officers, make charging decisions.

That *Civil Beat*—a local internet news source—published two stories around the filing of Fatai's original complaint is of little help. *See* Dkt. No. 101 at ¶¶ 205, 206. There is no evidence any newly named Defendant was aware of these articles. And as Honolulu points out, Dkt. No. 122 at 12–13, even if the newly added Defendants were aware of these articles and the suit writ large, there is no evidence to support a finding that they "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). Quite the contrary.

---

[8]Finding otherwise would severely undermine the relation back notice requirement. Taking Fatai's position to its conclusion, every officer involved in any operation and prosecution should be on constructive notice that a criminal defendant may file a civil suit against him or her. The Court declines to broaden fair notice to the meaning suggested by Fatai.

Because these Defendants, who allegedly worked so closely to investigate and prosecute Fatai were "not named at all in the original complaint—not as defendants, parties, witnesses or in any factual allegation or count," Dkt. No. 99 at 18, the Court cannot find that the newly added Defendants should have known that "but for a mistake" of identity, they would have been named. As the Court has previously explained, "it strains credulity, given the number of times Fatai was allegedly tried, apparently over the course of seven years, that he would have almost no idea how and when each Defendant figured into his arrest and prosecution." Dkt. No. 99 at 12. The Court will not simply assume the newly added Defendants knew they would have been named as Defendants because they had a role in his investigation and prosecution.[9]

Further, whether the newly added Defendants were on notice of the suit is not a genuine issue of fact to be resolved through discovery. It is a threshold showing that Fatai bears the burden of satisfying because the purpose of the relation back rules are to ensure that unwitting defendants are not subjected to the time and expense of litigation where they were not on timely notice of the claims against them. As the Court previously explained:

---

[9]That Corporation Counsel represents Ramos and Muraoka—named in the original complaint—as well as several of the newly added Defendants is also unpersuasive. Sharing of counsel does not imply, much less demonstrate, that such counsel would have reached out to the newly added Defendants at the time of the original complaint to notify them that they were not, but could be, named. There is no plausible reason why counsel would do so and to suggest otherwise is pure conjecture.

> Courts routinely deny leave to amend to add new defendants on the ground that there is no indication the would-be defendants had notice. *See e.g.*, *Harlow*, 2019 WL 6520038, at *2 (explaining "Plaintiff cannot meet his burden of showing the proposed defendant . . . had actual or constructive notice" because he failed to "allege in his motion or supporting declaration any facts suggesting" they had such notice). Courts do so because the purpose of statutes of limitations is to, in part and under certain circumstances, protect would-be defendants from having to bear the time and expense of litigation. *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1005 (9th Cir. 2014). While the relation back rules allow flexibility for plaintiffs, they do not wholly undercut this "respected" purpose. *See id.* Indeed, the relation back rules serve the "purpose of balancing the defendant's interests protected by the statute of limitations with the preference of the Federal Rules of Civil Procedure in general . . . for resolving disputes on their merits." *Krupski*, 560 U.S. at 550.

Dkt. No. 99 at 16–17. Here, the Court has afforded Fatai multiple opportunities to fend off relation back defenses asserted in response to both the FAC and SAC, and those opportunities have resulted in little more than repeated conjecture and pleas to await discovery. The law permits neither.

Finally, no equitable principles apply in this case. Equitable tolling applies "if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Isagawa v. Homestreet Bank*, 769 F. Supp. 2d 1255, 1234 (citing *Santa Maria v. Pac. Bell*, 2202 F.3d 1170, 1178 (9th Cir. 2000) (internal quotation marks omitted). Equitable estoppel in this context focuses on the conduct of defendants in preventing the plaintiff from bringing suit. *"Makiko D." v. Hawaii*, 2007 WL 1153811, at *9 (D. Haw. Apr. 17, 2007) (citing *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002). Neither applies.

Fatai has not alleged that the newly added Defendants were in any way hidden from him.   In fact, Fatai concedes, "these particular Defendants were aware of ongoing saga of [Fatai] being taken to trial four times (*as they were State's witnesses and provided evidence against [Fatai]*. . . ."   Dkt. No. 117 at 17 (citing SAC at ¶¶ 17–26) (emphasis added).   Given this representation, it is clear Fatai knew both that the newly added Defendants factored into his investigation and prosecution and how they did so.   Nor has Fatai alleged that the newly added Defendants somehow prevented him from naming them.   Accordingly, there is no basis to equitably toll the statute of limitations based on the circumstances alleged.

## II.   42 U.S.C. § 1983 Claims

To establish a Section 1983 claim, a plaintiff must plead "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes."   *Williams v. California*, 764 F.3d 1002, 1009 (9th Cir. 2014) (citing *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)) (internal quotation marks omitted).   Here, Fatai alleges Defendants engaged in the following:

1.   Illegal detention and prosecution (all Individual Defendants);

2.   Illegal seizure (all Individual Defendants);

3. Due process violations for failure to divulge exculpatory and impeachment evidence and fabricating evidence (all Individual Defendants);

4. Failure of officers to intervene when they witnessed another officer or officers violating Fatai's rights (all Individual Defendants except Namoca); and

5. Conspiracy to violate the above rights (all Individual Defendants except Namoca).

Dkt. No. 101 at ¶¶ 210–243.   Fatai alleges the policies and customs of Honolulu were the cause of these alleged constitutional violations.   *Id.* at 244–256.   Each of Fatai's Section 1983 claims is addressed in turn.

## A. Claims Against Individual Defendants

### i. Illegal Detention and Prosecution (Count I)

Some district courts appear to have tacitly recognized "detention without probable cause" claims.   *See, e.g.*, *Woods v. City of Reno*, 2020 WL 4194844, at *12–13 (D. Nev. 2020) (explaining that "[s]uch a violation occurs when an officer holds an individual without any reason before the formal onset of a criminal proceeding but it can also occur when legal process itself goes wrong such as when a judge relies solely on a police officer's false statements to decide the issue of

probable cause" (citing *Manuel v. City of Joliet*, 137 S. Ct. 911, 918–19 (2017) (internal quotation marks omitted)).

While the Court agrees that *Manuel* grounded a "detention absent probable cause" claim in the Fourth Amendment, *see* Dkt. No. 116 at 9, the Court finds, that given the circumstances presented, this claim is redundant of Fatai's Fourteenth Amendment claims in Count III. As the *Manuel* Court explained, the Court must first identify the constitutional right at issue. 137 S. Ct. at 920. Once complete, the Court must then "determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel,* 137 S. Ct. at 920. Fatai's claims center on having to endure ongoing prosecution and pretrial detention because the Individual Defendants failed to disclose exculpatory evidence—*i.e.*, the flaws in their investigation and threats against Medford—and falsified and omitted evidence—*i.e.*, overstating Medford's reliability and failing to include breaches of protocol in executing their investigation. *See generally* Dkt. No. 101.

Ultimately, and despite Fatai's protestations to the contrary, *see* Dkt. No. 116 at 11–14, it makes no difference whether the Court considers his "detention absent probable cause" claim under the Fourth or Fourteenth Amendment (discussed *infra*). Because both claims center on falsified reports and undisclosed exculpatory evidence, the showing necessary to establish the claims is the same.

Nothing the Supreme Court or Ninth Circuit has said to date suggests otherwise. Thus, Count I is DISMISSED WITH PREJUDICE.

## ii. Unlawful Seizure of Personal Property (Count II)

Fatai alleges Defendants unlawfully seized his car and improperly subjected it to "forfeiture as a result of alleged drug dealing." Dkt. No. 101 at ¶ 159. Defendants argue that either Plaintiff lacks standing because he failed to exhaust his administrative remedies, or his claim is time barred because it accrued at the time his car was seized in 2011, not when the charges against him were dropped in 2018. Dkt. No. 105-1 at 12–15. The Court has already found the latter argument to be less than persuasive and does so again here pursuant to the same rationale. *See* Dkt. No. 99 at 21-23. Accordingly, the Court addresses only Defendants' administrative exhaustion argument.

The Court finds that nothing in the forfeiture statute or in any authority cited by the Individual Defendants prohibits a civil suit to recover or be compensated for seized property if a plaintiff fails to first file an administrative claim to recover the property. *See* Haw. Rev. Stat. § 712A-10; Dkt. No. 105-1 at 12–13.[10] Indeed, the unsupported argument defendants advance would appear to deny a remedy to such a prospective plaintiff unless the government first initiated a forfeiture proceeding.

---

[10]This is further supported when the forfeiture statute, which lacks a specific claims-processing provision, is compared to Hawaiʻi Revised Statute Section 46-72 (discussed *infra*), which expressly proscribes tort liability against the counties if timely notice is not provided prior to filing suit.

That cannot be the law.   As the Court rejects both of Defendants' grounds for dismissing Count II, their motion to dismiss that count is DENIED.

### iii.   Due Process Violations (Count III)

Fatai appears to bring two distinct due process claims: (1) failure to disclose exculpatory evidence (*Tatum*); and (2) falsifying evidence (*Devereaux*).   Dkt. No. 72 at 15–24.   In short, Fatai has alleged sufficient facts to state a claim under either theory.   Accordingly, the Individual Defendants' motion to dismiss Count III is DENIED.[11]

### a.   Failure to Disclose

In *Tatum v. Moody*, the Ninth Circuit explained that a Fourteenth Amendment violation for failure to disclose exculpatory evidence can establish Section 1983 liability when that failure leads to detentions of "(1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks."   768 F.3d 806, 819–20 (9th Cir. 2014).

---

[11]The Court does not address a *Brady* theory of liability because it is unnecessary; *Tatum* provides for liability where an officer's failure to disclose exculpatory evidence leads to the continued pretrial detention of a defendant.   *See Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014).

In *Tatum*, a 27-month detention was considered of "unusual length." *Id.* at 820. The court also counseled that, "this sort of due process claim is actually triggered by the failure to disclose evidence that is not merely material but *strongly indicative of the plaintiff's innocence.*" *Id.* (emphasis in original). In *Tatum*, officers failed to inform a prosecutor and criminal defendant suspected of robberies with a particular modus operandi that additional robberies involving that same modus operandi were committed while the defendant was in custody and that another person was arrested in connection with those additional robberies. *Id.* at 811–13. Finally, "[i]n the context of a [Section] 1983 suit against police officers for a due process violation, official conduct violates due process only when it shocks the conscience, a standard satisfied in circumstances [where officers] either consciously or through complete indifference disregard[] the risk of an unjustified deprivation of liberty." *Id.* at 820–21.

Fatai claims he was detained pending trial for roughly three years.[12] *See* Dkt. No. 101 at ¶ 164; Dkt. No. 116 at 19. As this exceeds the 27-months found sufficient in *Tatum*, Fatai has satisfied this element. Moreover, the facts, as pled, support a finding that the Individual Defendants knew *of certain facts that support*

---

[12]Though the SAC provides little detail concerning why Fatai was "placed in custody" for "roughly three years," *see* Dkt. No. 101 at ¶ 164, the Court assumes for purposes of this motion that Defendants' withholding and falsifying evidence contributed to the ongoing prosecution and eventual pretrial detention. At a later stage of this litigation, Fatai will bear the burden of demonstrating how each Defendant's actions *caused* this detention if he is to succeed on this claim.

*an innocence finding—i.e.*, Medford's car and person were not searched prior to the first controlled drug-buy, Officers did not witness or record Medford's interaction with Fatai at that drug-buy, Officers did not see Medford leave Fatai's car with drugs, no drugs or money were found in Fatai's car or on his person pursuant to either of the two controlled drug-buys, and Medford was pressured to implicate someone and had no prior history of reliability. This is different from saying Defendants *knew* he was innocent, as Plaintiff also repeatedly asserts. But *knowing* of innocence is not necessary to state a *Tatum* claim; it is sufficient to show that Officers were deliberately indifferent. *Tatum*, 768 F.3d 806, 820–21. That Officers were aware of these facts supporting innocence and, allegedly, failed to disclose them[13] is sufficient *at this stage* to meet that standard.

Accordingly, though the Court still sees this exculpatory evidence as "hardly comparable to the evidence withheld in *Tatum*," Dkt. No. 99 at 25, it nonetheless finds Fatai has stated a claim pursuant to *Tatum*.

### b. Falsifying Evidence

It is "virtually self-evident" that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux v.*

---

[13]Again, the Court notes that at a later stage of this litigation, Fatai will bear the burden of demonstrating with specificity which allegedly exculpatory facts were withheld and how they caused him harm.

*Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001). A plaintiff prevails on a due process fabrication of evidence claim if he establishes that "(1) the defendant official deliberately fabricated evidence; and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017). Deliberate fabrication can be shown by either "direct evidence of fabrication" or "circumstantial evidence related to a defendant's motive." *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018).

Fatai describes the nature of the allegedly fabricated/false evidence—*e.g.*, Officers failed to include in reports and affidavits how they "coerced and/or incentivized" Medford to serve as an informant, fabricated details as to how they came to acquire the drugs allegedly purchased from Fatai by Medford at the first controlled drug-buy, exaggerated as to Medford's credibility and her role in other investigations, and misrepresented how they came into contact with Medford, stating she approached the officers, instead of the reverse. Dkt. No. 101 at ¶¶ 105, 123, 124, 148, 149.

Taking the allegations in the SAC as true and construing them in a light most favorable to Fatai, it appears that reports and affidavits generated pursuant to the County's case against him contained false information. Whether Officers generated those falsities "deliberately" is, at the very least, a genuine question of

fact not ripe for resolution at this stage.   And though it is not clear from the face of the SAC how these fabrications *caused* Fatai's deprivation of liberty—a showing he will eventually be required to make, *see Spencer*, 857 F.3d at 798—the Court finds that the allegations in the SAC at least support a finding that the reports and affidavits contributed to his prosecution and related pretrial detention. Accordingly, he has sufficiently pled a *Devereaux* claim.

### iv.     Failure to intervene (Count IV)

Fatai's failure to intervene claim suffers from at least two defects.   First, his factual allegations do not clearly establish what any Individual Defendant failed to stop.   Second, he provides no legal authority, and the Court finds none, clearly establishing an Officer's duty to intervene in the circumstances presented here.

Read in the light most favorable to Fatai, his factual allegations, at best, establish that (1) Ramos, Muraoka, Nahulu, Sugai, and Mark Kealoha had a role in surveilling the alleged controlled drug-buys between Medford and Fatai; (2) those same Defendants wrote cross-referencing police reports/affidavits related to those events; and (3) some Defendants testified at Fatai's trials.   Dkt. No. 101 at ¶¶ 20, 25, 160, 174, 175.   What is missing from the complaint is any *factual allegation* explaining *how* any Defendant knew any of the reports contained false, misleading, or omitted material information.   In fact, the Court has no indication *which* Defendant *actually made* misrepresentations in their reports, much less which

Defendant was aware of each such misrepresentation. "[O]fficers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). In short, Fatai has not pled facts sufficient to show any Officer had an opportunity to intercede because he has not pled sufficient facts to show any Defendant was even aware of the constitutional violation occurring.[14]

Even if he had, the Court finds that his failure to intervene claim cannot lie because the right was not clearly established at the time of the alleged misconduct. Fatai erroneously cites the Ninth Circuit's holding in in *Cunningham v. Gates*— "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen"—as conclusively settling this issue. 229 F.3d 1271, 1289 (9th Cir. 2000) (citation and internal quotation marks omitted). *Cunningham*, however, does not control because clearly defined rights cannot be established at such a high level of generality. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, (2011) (explaining that the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality").

---

[14]The only possible exception might be Defendant Ramos, who, because of his relationship with Medford, perhaps had specific knowledge that she had not approached the Officers and had not been reliably used in other cases. But in that circumstance, Defendant Ramos would be the impetus for the constitutional violation and so could not also be subject to liability for failing to intercede in a constitutional violation he created.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "A government official is entitled to qualified immunity from civil suit if, under the plaintiff's version of the facts, a reasonable official in the defendant's position could have believed that his conduct was lawful in light of clearly established law and the information the official possessed at the time the conduct occurred." *Ross v. Ortiz*, 2013 WL 3923487, at *10 (C.D. Cal. July 29, 2013), *aff'd by*, 587 Fed. Appx. 434 (9th Cir. 2014). In analyzing a claim of qualified immunity, a court must examine:

> (1) whether the facts as alleged, taken in the light most favorable to plaintiff, show that the defendant's conduct violated a constitutional right, and (2) if a constitutional right was violated, whether, in light of the specific context of the case, the constitutional right was so clearly established that a reasonable official would understand that what he or she was doing violated that right.

*Manzo v. Cty. of Riverside*, 2017 WL 10544292, at *6 (C.D. Cal. Oct. 19, 2017) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).

The case Fatai cites, *Tobias v. Artega,* 996 F.3d 571, 583–84 (9th Cir. 2021), to support a claim that there was a clear duty to intervene in the circumstances presented here is inapposite. *See* Dkt. No. 116 at 21–22. In that case, the Ninth

Circuit held an officer could be subject to Section 1983 liability where he or she failed to intercede to prevent a coercive interrogation in violation of an accused's due process rights. 996 F.3d at 583–84. But just because the Ninth Circuit has found that the failure to intervene to prevent a Due Process violation *in the coercive interrogation context* may lead to Section 1983 liability, does not mean that there was a clearly established duty to intervene in the Due Process context presented here (*i.e.*, failure to prevent misrepresentations and omissions in reports). *See Ashcroft v. al-Kidd*, 563 U.S. at 742. Nor is *Tobias* of any assistance to Fatai, as it was decided well after the conduct at issue here and therefore did not represent the state of clearly established law at the time of the officers' actions.

Ultimately, the Court agrees with the Individual Defendants that Fatai "cites no case—as there is none—showing there was a clearly established law requiring officers to intervene in any situation" Fatai has presented. *See* Dkt. No. 123 at 13. Thus, even if each Defendant knew that Officer's relationship to Medford was mischaracterized in reports and affidavits and that protocol was breached during the controlled drug-buys, the Court cannot conclude that any Defendant would know that failure to correct that record violated Fatai's constitutional rights. *See Thorpe v. City of Phila.*, 2020 WL 5217396, at *11 (E.D. Pa. Sept. 1, 2020) (dismissing a failure to intervene claim "[b]ecause it was not sufficiently clear that reasonable officers would have understood that failing to intervene when

confronted with another's fabrication and withholding of evidence violated [the defendant's] constitutional rights").

Because the Court finds any amendment pertaining to this claim would be futile, it is DISMISSED WITH PREJUDICE.

### v.    Conspiracy (Count V)

To establish a conspiracy claim under Section 1983, a plaintiff must demonstrate: (1) the existence of an express or implied agreement among the defendant officers to deprive a person of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement.   *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1166 (C.D. Cal. 2007) (citing *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991)).   "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available.   Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action."   *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999).   Accordingly, the existence of a conspiracy "is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances" that a plaintiff has met the elements of the claim.   *Id.* at 1301 (emphasis added).

The Court agrees with the Individual Defendants, see Dkt. No. 105-1 at 20–22, that because there was and remains a question as to whether the intracorporate-conspiracy doctrine applies to federal civil rights suits, qualified immunity bars Fatai's Section 1983 conspiracy claim. The Supreme Court in *Ziglar v. Abassi* noted that under the intracorporate-conspiracy principle, there is no unlawful conspiracy where there is "an agreement between or among agents of the same legal entity [and] the agents act in the official capacities." 137 S. Ct. 1843, 1867 (2017). While the Court did not expressly hold that this doctrine applies to the civil rights suit at issue in the case—brought pursuant to Section 1985(3) of Title 42 of the United States Code—it found that because "the [lower] courts are divided as to whether or not a [Section] 1985(3) conspiracy can arise from official discussions between or among agents of the same entity[,] . . . the law on the point is not well established." *Id.* at 1868. Accordingly, "a reasonable official lacks the notice required before imposing liability." *Id.*

Just as whether the intracorporate-conspiracy doctrine applies to a Section 1985(3) suit is not well established, so too for Section 1983 claims. *See, e.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–18 (6th Cir. 2019); *Haliw v. City of S. Elgin*, 2020 WL 1304697, at *11–12 (N.D. Ill. Mar. 18, 2020) ("Liability is not clearly established for conspiracies amongst police officers of a single

municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to [Section] 1983 claims").

The Court does need not reach whether the intracorporate-conspiracy doctrine applies to Section 1983 claims. The fact that so few Circuits—including the Ninth—have yet to rule on the issue demonstrates that, at a minimum, liability in the circumstances presented here—*i.e.*, where officers of the same police department are alleged to have conspired to violate someone's constitutional rights—cannot lie because the law is not clearly established. Accordingly, the Individual Defendants are entitled to qualified immunity and Count V is DISMISSED WITH PREJUDICE.

## B. *Monell* Claims (Count VI)

Fatai has not come close to alleging a cognizable *Monell* claim against Honolulu.

> A local government is liable for an injury under [Section] 1983 under ***three possible theories***. ***First***, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury. ***Second***, a local government can fail to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. ***Third***, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018) (emphasis added) (internal quotation marks and citations omitted). The Court addresses each theory in turn.

### i. Policy or Custom

For Honolulu to be liable under a policy or custom theory, Fatai must establish that an HPD policy, custom, or practice was the "moving force" behind the alleged violation of his rights. *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] plaintiff may prove 'the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.'" *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992)). Fatai appears to be arguing that the SAC supports a claim that unofficial (or "*de facto*") policies and customs led to the violation of his rights.[15] Dkt. No. 117 at 5–6 ("The SAC also clarifies that Plaintiff does not allege that the City's *written* policies (at least of which he is presently aware) are affirmatively unconstitutional."). As explained below, it does not.

Fatai alleges that "[a]s a matter of practice, Honolulu permits officers to present false evidence in support of criminal charges that should never have been

---

[15]This is supported by the SAC, which acknowledges that the Individual Defendants' allegedly unlawful acts "contradicted accepted practices for policing" and were "inconsistent with the written HPD policies." Dkt. No. 101 at ¶ 156.

brought." Dkt. No. 101 at ¶ 177. To support this claim, he points only to Police Chief Louis Kealoha fabricating evidence *in a single other case*. *Id.* at ¶ 178. Though only implicit in his complaint, he appears to also be alleging Honolulu had *de facto* policies permitting Defendants to: (1) "conduct a bogus and untrustworthy arrest and prosecution of Fatai"; (2) "fabricate false police reports and witness statements"; (3) "intentionally cause mistrials"; and (4) "seize vehicles through forfeiture" absent probable cause. Dkt. No. 117 at 9. Other than the alleged unconstitutional acts against Fatai, the complaint contains *no* factual allegations concerning the presence of these alleged *de facto* policies.

Because Fatai has failed to provide *any* additional factual allegations to support his claim that HPD had, in fact, employed any of these alleged *de facto* policies, the Court's reasoning in dismissing the policy-based *Monell* claim in the FAC is just as relevant here. As the Court explained:

> These allegations, even if accepted as true, "fall far short of alleging any 'informal policy' or 'widespread practice' sufficient to survive the instant motion." *See Franson v. City and Cty. of Honolulu*, Civil No. 16-00096-DKW-KSC, 2020 WL 4007549, at *6 (D. Haw. July 26, 2016) (citing *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011)). Pointing to a single instance (or two) of misconduct is insufficient. *See Navarro*, 72 F.3d at 714 ("Proof of random acts or isolated events is insufficient to establish custom."). *Repeated* violations of the same ilk are necessary. *Id.* Because Fatai has failed to allege facts demonstrating that the alleged unofficial policies are so widespread as to constitute the de facto policies of the HPD, he has failed to state a claim under a policy or custom theory of *Monell* liability.

Dkt. No. 99 at 33–34.   Apparently aware of these inadequacies, Fatai argues that

he need not point to any other similar acts of misconduct evidencing these *de facto*

policies.   Dkt. No. 117 at 9.   To do so, however, misapprehends controlling law.

To show an informal policy or widespread practice, he must, at a bare minimum,

allege something more than just the allegedly unlawful acts taken against him.   In

short, an isolated incident, *without more*, does not a policy make.

Fatai further argues that somehow the allegations in the SAC show "policies

of omission, where there are deficiencies in those policies that did not include

adequate procedural safeguards."   *Id.*   To state a policy of omission claim, a

plaintiff must "demonstrate that [the defendant] was on actual or constructive

notice that its omission would likely result in a constitutional violation".   *See Tsao*

*v. Desert Palace, Inc.*, 698 F.3d 1128, 1145 (9th Cir. 2012) (citation and internal

quotation marks omitted).   Because Fatai makes no allegations showing Honolulu

was on notice, he has failed to state a policy of omission claim.

### ii.    Failure to Train

Municipal liability may only be imposed for failure to train when that failure

"reflects a 'deliberate' or 'conscious' choice by a municipality."   *City of Canton v.*

*Harris*, 489 U.S. 378, 389 (1989).   Further, failure to train claims "can only yield

liability against a municipality where that city's failure to train reflects deliberate

indifference to the constitutional rights of its inhabitants."   *Id.* at 392.   Given

33

these principles, a plaintiff seeking to impose municipal liability for failure to train must show: "(1) an inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training actually caused a deprivation of [a plaintiff's] constitutional rights." *Merritt v. County of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (setting forth a similar three-prong test); *Wereb v. Maui Cty.*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010).

Municipal liability may be imposed when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. Deliberate indifference may be shown through a "pattern of tortious conduct by inadequately trained employees" or where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 407–09 (1997).

Fatai's failure to train allegations do not satisfy these standards. Without any factual predicate, Fatai alleges "Honolulu failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the

training and supervision of officers and agents of the [HPD]" with respect to a host of investigative techniques and disclosure requirements. *See* Dkt. No. 101 at ¶ 247. He cites the numbers of investigations and arrests related to drug laws conducted by Honolulu in 2011, claiming those statistics demonstrate that the need for "adequate" training was "obvious and known to Honolulu." *Id.* at ¶ 189. However, the fact that Honolulu frequently investigated drug crimes does not show an "obvious" need for different (or additional) training. *See Canton*, 489 U.S. at 390. Indeed, that Fatai cites no other instances of allegedly unconstitutional conduct similar to that alleged here strongly suggests the contrary.

Additionally, Fatai alleges no facts demonstrating a "pattern of tortious conduct" that could lead to even an inference that HPD policymakers were implicitly aware of such a need. *See Brown,* 520 U.S. at 407–09. Finally, there are no facts to suggest that, even if such a need existed, any policymaker was deliberately indifferent to it. Accordingly, Fatai has failed to allege facts to state a plausible claim under a failure to train theory of *Monell* liability.

### iii. Ratification

Under a ratification theory, Fatai "must show the decision [by a policymaker] was the product of a conscious, affirmative choice to ratify the conduct in question." *Edenfield v. Estate of Willets*, 2006 WL 1041724, at \*16 (D. Haw. Apr. 14, 2006); *accord Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.

1999) (ratification requires proof of a policymaker's knowledge of the alleged constitutional violation); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) (ratification requires an adoption and express approval of the acts of others who caused the constitutional violation). An official policymaker must "make a deliberate choice from among various alternatives to follow a particular course of action." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). A mere failure "to overrule the unconstitutional discretionary acts of subordinates[,]" without expressly endorsing or approving of the conduct, is an insufficient predicate for the imposition of liability against the municipality. *Gillette*, 679 F.2d at 1348.

Fatai's habit of stating a broad and sweeping legal conclusion unsupported by facts is perhaps most pronounced where he alleges: "the constitutional violations committed against [Fatai] were committed with the knowledge, approval, or endorsement of persons with final policy making authority." *Id.* at ¶ 254. His support for this: Deputy Chief McCarthy stated that "he believed the actions of the police officers" were in "accordance with the policies and practices" of the HPD, *id.* at ¶¶ 182, 183; Officer Namoca and Lieutenant Mark Kawasaki approved of Officers' undercover investigation utilizing Medford, the Officers' resulting reports concerning that investigation, and Fatai's arrest, *id.* at ¶¶ 26, 144, 152, 155; and Officers' actions were "ratified up the chain of command." *Id.*

While these allegations may put HPD supervisors on notice as to the actions of the officers they supervise, missing is any fact allowing for even an inference that Defendant Namoca, Lieutenant Kawasaki, Deputy Chief McCarthy, or any other supervising officer had specific knowledge of any constitutional violation. At best, Fatai has alleged that HPD supervisors failed "to overrule the unconstitutional discretionary acts of subordinates[,]" without expressly endorsing or approving of the conduct. *See Gillette*, 679 F.2d at 1348. That is an insufficient predicate for the imposition of liability against the County. *See id.* Nor is there any allegation that the identified supervisors were officials with final policymaking authority over the challenged investigatory techniques and practices. Accordingly, Fatai has failed to allege sufficient facts to state a claim under a ratification theory of *Monell* liability.

### iv. Summary of Section 1983 Claims against Honolulu

Fatai has failed to plead facts sufficient to state a claim under any theory of *Monell* liability. As the Court has previously provided Fatai an opportunity to cure this defect and he has failed to do so, his Section 1983 claim against Honolulu (Count VI) is DISMISSED WITH PREJUDICE.

## III. State Law Claims

Honolulu argue that all state tort claims against it must be dismissed because Fatai failed to provide notice of those claims to the County pursuant to Hawaiʻi

Revised Statute Section 46-72 ("HRS § 46-72") prior to initiating this suit. Dkt. No. 104-1 at 17–18. Further, the County argues that because compliance with the notice requirement is jurisdictional, this Court may consider "'any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction.'" *Id.* at 18 (quoting *Kingman Reef Atoll Invs., L.L.C. v. United States*, 545 F. Supp. 2d 1103, 1110 (D. Haw. 2007)). Because the Court finds HRS § 46-72 is a statute of limitations (*i.e.*, a claims processing rule), and thus not jurisdictional, the Court concludes it cannot consider evidence outside the pleadings in resolving a genuine factual question over whether timely notice to the County has been met.[16]

> HRS § 46-72 reads as follows:

> Before the county shall be liable for damages to any person for injuries to person or property received upon any of the streets, avenues, alleys, sidewalks, or other public places of the county, or on account of any negligence of any official or employee of the county, the person injured, or the owner or person entitled to the possession, occupation, or use of the property injured, or someone on the person's behalf, within two years after the injuries accrued shall give the individual identified in the respective county's charter, or if none is specified, the chairperson of the council of the county or the clerk of the county in which the injuries occurred, notice in writing of the injuries and the specific damages resulting, stating fully when, where, and how the injuries or damage occurred, the extent of the injuries or damages, and the amount claimed.

---

[16]That is not to say that a Court may not dismiss a claim upon a motion to dismiss for failure to satisfy a statute of limitations where failure to comply with the statute of limitations is apparent on the face of the pleadings. *Seven Arts Filmed Entm't Ltd. V. Content Media Corp. PLC*, 733 1251, 1254 (9th Cir. 2013) (citation omitted).

Section 13-111 of the Honolulu County Charter in turn provides:

No action shall be maintained for the recovery of damages for any injury to persons or property by reason of negligence of any official or employee of the city unless a written statement, stating fully when, where and how the injuries occurred, the extent thereof and the amount claimed therefor, has been filed with the corporation counsel within six months after the date the injury was sustained.

As this Court has explained, HRS § 46-72 applies to negligence as well as intentional tort claims against a county. *Nakamoto v. Cty. of Hawaii*, 2018 WL 2750224, at *4 (D. Haw. July 7, 2018).

Courts have consistently held that HRS § 46-72 operates as a statute of limitations for tort claims against the counties. *See, e.g.*, *Silva v. City & Cty. of Honolulu*, 165 P.3d 247, 256–57 (Haw. 2007) ("while the notice requirement set forth in HRS § 46–72 may appear to be a mere 'condition precedent to liability,' it operates, in reality, as a statute of limitations" (citations and internal quotation marks omitted)); *Kahale v. City & Cty. of Honolulu*, 90 P.3d 233, 239 (Haw. 2004) ("We hold that . . . HRS § 46–72 . . . is the statute of limitations applicable to actions against the counties."); *see also Nakamoto*, 2018 WL 2750224, at *3 n.1 (acknowledging HRS § 46-72 as a statute of limitations). A statute of limitations is a "quintessential claim-processing rule[] and unless [the] legislature clearly states otherwise, such rules will be regarded as non-jurisdictional." *Weil v. Elliott*, 859 F.3d 812, 814 (9th Cir. 2017) (citing *United States v. Kwai Fun Wong*, 575 U.S. 402, 409–411 (2015)). The legislature "must do something special, beyond

setting an exception-free deadline, to tag a statute of limitations as jurisdictional."
*Kwai Fun Wong*, 575 U.S. at 410.

Defendants rely on the undersigned's decision in *Bernhardt v. Cnty. of Hawai‘i*, 2019 WL 4308533 (Sept. 11, 2019) for the proposition that HRS § 46-72 is jurisdictional.   Dkt. No. 104-1 at 17.   In that case, both parties agreed as to when notice was provided to the county.   *Bernhardt*, 2019 WL 4308533, at *3.  At issue was when the two-year clock started—when the alleged tort occurred or when the plaintiff came to understand she may have a claim.   *Id.*   In other words, the Court was not resolving whether HRS § 46-72 was jurisdictional.   And though the Court expressed that, because the notice was provided more than two years after the tort occurred, it lacked subject matter jurisdiction over the state law claims against the county, the Court's reasoning made clear that it merely found plaintiff's notice to the county was untimely and, thus, the claims related to it time-barred.   *Id.* at 3–5.[17]

Here, again, Fatai does not allege in his complaint or opposition that he, in fact, complied with the notice requirement at HRS § 46-72.   *See* Dkt. No. 117 at 23–24.   Instead, he appears to argue that the Court cannot, at this procedural stage,

_____

[17]Honolulu also cites *Burton v. City and Cty. of Haw.*, 2020 WL 5735128 (D. Haw. Sep. 24, 2021) as supporting the proposition that HRS § 46-72 is jurisdictional.   Dkt. No. 122 at 14.   But this case is also inapposite.   It appears that the parties in that case did not dispute *whether* notice was sent to the county.   *See id.* at *4–*5 (rejecting plaintiffs' argument that "the summons to all defendants" was sufficient to satisfy the notice requirement).   That is not the case here, where Fatai argues that whether he sent notice is a fact in dispute.

decide the question of whether he provided notice or not. *Id.* While Fatai is, **no doubt**, wasting the parties' and this Court's time in failing to either (1) credibly allege he provided notice to the County consistent with HRS § 46-72 or (2) stipulate that he did not do so, the Court at this procedural posture is precluded from considering any declarations or exhibits in ruling on Honolulu's motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam)); *Bd. of Trustees of the Bay Area Roofers Health & Welfare Tr. Fund v. Gudgel Yancey Roofing Inc.*, 225 F. Supp. 3d 1106, 1114 (N.D. Cal. 2016). As the Court has explained, it "cannot consider [any] declaration[s] in determining whether Fatai complied with HRS § 46-72 until and unless a summary judgment motion is presented." Dkt. No. 99 at 43.[18]

Because failure to comply with HRS § 46-72 appears to be the only ground upon which Honolulu seeks dismissal of Fatai's state law claims against it, *see* Dkt. No. 104-1 at 17–18, and the Court cannot resolve at this stage whether Fatai has, in fact, complied with the statute, Honolulu's motion to dismiss the state law claims against it is DENIED.

---

[18]Honolulu has previously submitted a declaration from Tammy Chee, an employee of Honolulu's Corporation Counsel's Office with access to that office's records. Dkt. No. 48-2. Chee represents that "a diligent search of all written claims" submitted to the Corporation Counsel's office "failed to disclose any written notice of a claim made against the City and County of Honolulu or its employees by Plaintiff Sefo Fatai." *Id.* at 2.

## CONCLUSION

Defendants' motions to dismiss, Dkt. Nos. 104, 105, are GRANTED IN PART AND DENIED IN PART.   All claims against Defendants Namoca, Nahulu, Sugai, and Mark Kealoha are DISMISSED WITH PREJUDICE.   Counts I, IV, V, and VI are DISMISSED WITH PREJUDICE.   Counts II, III, and VII–XI as against Defendants Ramos and Muraoka survive this order, as does Count XII against Honolulu.   No further leave to amend is permitted.

IT IS SO ORDERED.

Dated: July 13, 2021 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

*Sefo Fatai v. City and County of Honolulu, et al.*; Civil No. 19-00603-DKW-WRP; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS.**

42