JENNIFER BROWN, #10885
P.O. Box 8415
Honolulu, HI 96830
(808) 554-5576
jenlbrownlaw@gmail.com

DAVID B. OWENS*
LOEVY & LOEVY
 (312) 243-5900
david@loevy.com
*admitted *pro hac vice*
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF HAWAI'I

| | |
|---|---|
| SEFO FATAI,<br><br>     Plaintiff,<br><br>         v.<br><br>CITY AND COUNTY OF HONOLULU, POLICE CHIEF LOUIS KEALOHA, SERGEANT EDGAR NAMOCA, LIEUTENANT MARK KAWASAKI, OFFICER MARK RAMOS; OFFICER FUMIKAZU MURAOKA, OFFICER JOSHUA NAHULU, OFFICER B. SUGAI, and JOHN and/or JANE DOES 1-10,<br><br>     Defendants. | NO. 1:19-cv-603 DKW/WRP<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF FACTS AND ADDITIONAL STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Chief Judge Watson<br>Hon. Magistrate Judge Porter<br><br>Trial Date: August 15, 2023 |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## <u>CONCISE STATEMENT OF FACTS</u>

Defendants' concise statement of facts ("DSOF") must include only "each material fact that the movant contends is undisputed." Local Rule 56.1(a). Yet, Defendants' concise statement of acts includes facts that there is zero good faith basis to contend are undisputed in light of Plaintiff's directly contrary testimony, *e.g.*, 17, 21, 22, & 51, including facts Defendants themselves even describe in the concise statement as disputed, ¶34. This is contrary to the Local Rules, Federal Rule of Civil Procedure 56, and Rule 11 (if Defendants are really asserting core disputed facts in this case are undisputed when, in fact, they know the facts are very much in dispute). For convenience, a list of exhibits referred to in Plaintiff's Concise Statement of Facts and for other purposes below, follows:

## Exhibit List

1. Defendant Muraoka's Report
2. SIS Work Request Report
3. Defendant Muraoka First Deposition Excerpts
4. Officer Sugai Diagram
5. Defendants' Search Warrant Application
6. Defendant Ramos First Deposition Excerpts
7. Muraoka's Evidence Report
8. Defendant Ramos 2015 Trial Testimony
9. Various 2015 Trial Testimony
10. March 14, 2016 Trial Testimony (Ramos and Muraoka)
11. March 15, 2016 Trial Testimony (Muraoka Only)
12. 2011 Grand Jury Proceedings
13. 2013 Grand Jury Proceedings
14. HPD Documenting Informants Policy (filed under seal)
15. HPD Evidence Handling Policy (filed under seal)
16. HPD police reports policy (filed under seal)
17. HPD Narcotics Investigations Policy (filed under seal)
18. HPD "Face Sheet"
19. Defendant Ramos Initial report
20. Officer Nahulu Report
21. Officer Mark Kealoha Report
23. Defendant Ramos Closing Report
24. Christensen Drug Results Report

25. Medford Statement
26. Defendants' Arrest Warrant Document
27. Criminal Complaint against Fatai
28. Defendant Muraoka Second Dep. Excerpts
29. Defendant Ramos Second Dep. Excerpts
30. Excerpts of Newly Produced Emails
31. Christensen Dep. Excerpts
32. Plaintiff Deposition Excerpts.
33. Mark Kealoha Deposition Excerpts
34. Joshua Nahulu Deposition Excerpts.

| **Response to Defendants Statement of Material Facts** | **Evidentiary Support** |
|---|---|
| 1. **Admit in part, Dispute in Part**. Admit that Defendants were doing knock and burns from Medford to potentially obtain a warrant for her arrest for methamphetamine trafficking (which are material facts defendants did not disclose until their 2022 depositions). Disputed that Medford was providing "useful/credible information" to the officers, as insinuated in the warrant application, given the fact that Medford was the target of two prior controlled buys and had not ever, before August 24 2011, participated in any investigation as an informant, and Defendants did not point to any information Medford provided in their depositions. | *See* PSOF ¶39, Ex. 3, Muraoka Dep., at 23-24, 88-95, 232-33; Ex. 28, Muraoka Second Dep., at 24-25, 36, 38; Ex. 6, Ramos Dep., at 154-55, 162, 196, 362 |
| 2. **Admit in Part, Dispute in Part.** Fact is disputed by Ramos's own trial testimony from the 2016 trial, where he claimed that he engaged Medford in a traffic stop. As such, there is no basis for Ramos contending this fact is undisputed. Admit that Ramos first disclosed this version of events in his 2022 deposition. | Compare Ex. 10, Ramos 2016 Trial Tr, at 50-51, *with* Ex. 6, at 165, 167, 194-95. |
| 3. **Admit in part, Disputed in Part.** Admit that Medford gave Ramos drugs, and that Ramos lied about the existence of a warrant (as the warrant had not been issued), but dispute that Medford "agreed to cooperate with HPD," when, in fact, she was coerced. | See Ex .6 at 171-74, 239 (re coercion); *id.* at 162 (warrant was not completed but was pending). |
| 4. **Admit in part, Disputed in part**. Disputed as to what "HPD," writ large, knew about Meford's prior acts or that HPD could have some larger "intention," particularly given HPD is not a defendant and Plaintiff was not given *Monell* discovery. Undisputed that Medford and Ramos knew about Medford being the target of two prior purchases (which they did not disclose until 2022). | |
| 5. **Disputed**. Medford was threatened and coerced both in August 2011 and in the "knock and burns" themselves. | *See* Ex .6, Ramos Dep. at 155-58, 171-74, 239 |
| 6. **Admit**. | |

| | |
|---|---|
| 7. **Admit in part, disputed in part.** Undisputed that Ramos made Medford promises (which were undisclosed) but disputed that such a promise included that she "could remain confidential and would not be forced to testify," which was not in any report or prior testimony of Ramos. | *See* Sources in ¶3. Ex. 25 (Medford Statement saying she will testify); Ex. 8 (2015 trial testimony); Ex. 12 (2011 grand jury); Ex. 13 (2013) grand jury); Ex. 19 (initial report); Ex. 23 (closing report). |
| 8. **Disputed in part.** Admit this is what Ramos *claims* Medford told him, but any notion these claims were valid or reliable is disputed. Plaintiff never sold drugs to Medford and was not a drug dealer. | See PSOF ¶1. |
| 9. **Admit in Part and Disputed in Part**. Admit that Plaintiff did not know Misty well and had met her, at most, only once before August 24, 2011, and admit that Plaintiff did not recognize Misty in the elevator in 2015. Disputed that Plaintiff's testimony, which must be credited, are just "claims." | |
| 10. **Disputed**. | See PSOF¶¶7, 17-20 |
| 11. **Admit**. | |
| 12. **Admit in Part, Disputed in Part**. Undisputed that the entire HPD traffic division and/or "solo bike" officers were not at the briefing, disputed to the extent this implies they could not be summoned for use as part of the investigation, particularly where "solo bike" operates on the whole island and members of this investigation team were also former solo bike officers. | See Ex. 3, 84; Ex. 34, 22 |
| 13. **Admit in Part, Disputed in Part**. Disputed that there was a "controlled purchase," because no such purchase occurred. Admit that Muraoka and Ramos met with Medford before and after her interactions with Fatai (which involved no drug transaction). | PSOF 1. |
| 14. **Disputed** that Defendants "thoroughly" searched Medford in this manner, where: they did not have a | Ex. 32, Plaintiff Dep., at 12, 168, |

| | | |
|---|---|---|
| | female officer, as required per policy; they did not record any search in their reports; where there is no record (including photographs) of what was searched or inventory made where they searched; prior testimony did not previously describe a thorough search; Medford hid drugs in her bra; and where she produced a Crystal Light box containing drugs to Defendants hidden somewhere in her car/self, which she had not received that from Plaintiff, and no officer documented seeing when she got out of Plaintiff's car. | 196, 197; Ex. 23 (Ramos Closing Report); Ex. 19 (Ramos Initial Report); Ex. 1 (Muraoka Report); Ex. 8, Ramos 2015 Trial testimony, at 59-61, 81-84; Ex. 6, Ramos Dep., at 231, 233-34, 237, 335, 376-77; Ex. 21 (Officer Kealoha Report); Ex. 33, Kealoha Dep., at 25-26; PSOF, ¶32. |
| 15. | **Disputed**. | See sources in response to ¶14. |
| 16. | **Disputed** | See sources in response to ¶14. |
| 17. | **Disputed**. In addition to disputing the "before searches" Plaintiff disputes that Medford ever contacted Plaintiff "normally" for anything, let alone drug purchases, and disputes that Medford contacted him at all, which is disputed by Ramos's own testimony where he admits that Medford spoke with Tanya Waller | See sources in response to ¶14; Ex. 32, Plaintiff Dep., at 194; Ex. 6, Ramos Dep., at 219; Ex. 8, Ramos 2015 Trial Testimony, at 41, 64. |
| 18. | **Admit in Part, disputed in Part**. Admit that Tanya spoke with Medford, but disputed that Plaintiff was the one who set up the meeting, it was Medford and Waller having a conversation Plaintiff did not participate in. | See sources in response to ¶17. |
| 19. | **Disputed**. Disputed that Muraoka can provide this fact, as he did not observe Medford driving at all. Disputed that it was possible for any of the officers to have "constant visual surveillance" of Medford as she drove to or from the Chuck-E-Cheese to the Park | See sources in response to ¶14; Ramos Dep., at 239-40. |

| | |
|---|---|
| and Ride, as she was in her own full-size SUV, and did, in fact, produce a Crystal Light box of drugs and secret the $1900 in buy money as well. | |
| 20. **Admit in Part, Disputed in Part**. Undisputed that Fatai parked, Medford got in the car, and spoke with Plaintiff. Disputed that Medford "appeared to . . . exchange something with Fatai," when the officers admit they could not see either person's hands and did not actually view a transaction at all. | Ex. 6, Ramos Dep., at 247; Ex. 33, Kealoha Dep., at 23-25; Ex. 34, at 94-95. |
| 21. **Disputed.** Disputed that Plaintiff committed a traffic violation and disputed that Muraoka is the one who initiated the traffic stop (which was two motorcycle officers before Muraoka arrived to also observe the search of Plaintiff and his car) | See Ex. 32, Plaintiff Dep., at 121, 126-27, 147, 197, 198, 287. |
| 22. **Disputed**. | See sources in response to ¶21. |
| 23. **Admit**. | |
| 24. **Admit** (for present purposes only) | |
| 25. **Disputed**, as there is no contemporaneous documentation of this statement having been allegedly made by Medford and any documentation of this alleged statement occurred *after* the officers learned the quantity of drugs Medford gave them. | See Ex. 6, Ramos Dep., at 320, 331-34. |
| 26. **Admit in Part, Disputed in Part**. Undisputed that "no representations were made that fingerprints were found." Disputed, however, that the baggie of drugs was dusted for prints, as Muraoka's report says they were "not dusted," and there is no evidence that the bag was tested, either. | See Ex. 1 (Muraoka Report); Ex. 31, Christensen Dep., at 30, 32-34. |
| 27. **Disputed.** First, this appears to be a legal claim rather than a statement of fact. Object to Defendants' providing opinion testimony. Second, the potential existence of fingerprints on both the Crystal Light box and drug evidence, which would *not* belong to Plaintiff, would be exculpatory. | |
| 28. **Disputed.** This appears to be a legal claim rather than statement of fact. Object to Defendants' providing opinion testimony. Disputed that there was ever probable cause to arrest Plaintiff; Disputed that | |

| | |
|---|---|
| Defendants assertions that there was probable cause could not have been undermined by the presence of fingerprints belonging to the person who put the drugs in the Crystal Light Box (which was *not* Plaintiff). | |
| 29. **Admit in part, Disputed in Part.** Undisputed that basic police practices require taking contemporaneous photographs of evidence and to submit the Crystal Light box into evidence, but disputed as to the reason why that was not done here and the suggested "custom" to destroy evidence was somehow related; the evidence could have been both photographed *and* submitted for forensic analysis. | |
| 30. **Disputed**. In addition to the dispute about Medford's willingness to testify, disputed that the "change in plans" related to Medford at all because (1) Defendants has already decided to arrest Plaintiff earlier that morning, and (2) the "changed circumstances" was the fact that Plaintiff's car was searched for a second time on August 26, 2011, and no drugs or money were found (which Muraoka said were "unforeseen circumstances" and why Ramos called Medford that day after the arrest) | See sources in ¶¶3, 7, above (re Medford willing to testify); ¶21 (re search of Plaintiff's car); Ex. 6, Ramos Dep., at 94, 273-74; Ex. 28, Muraoka Second Dep., at 41; Ex. 20 (Nahulu Report), Ex. 34, at 65-66. |
| 31. **Admit in Part Disputed in Part.** Admit that the officers Muraoka and Ramos did not complete their reports about 8/24 on 8/24. Disputed that there was probable cause (and object to opinion testimony on a legal question); disputed that the officers had to "work backwards" in belatedly writing their reports after they arrested Fatai (they had already decided to arrest him the morning of 8/26); and disputed that Ramos can say when his reports were completed, given his deposition testimony; disputed that they "worked backward" at all, as doing so violates HPD policy that requires reports be completed at the end of a shift regardless of prosecution. | Ex. 3, Muraoka Dep., at 46, 48, 105; Ex. 6, Ramos Dep., at 289-90, 298-304; Ex. 20 (Nahulu Report), Ex. 34, at 65-66; Ex. 16, at 1-2, 8. |
| 32. **Admit**. | |

| | |
|---|---|
| 33. **Admit in Part, Disputed in Part.** Undisputed that "no drugs were found," disputed that there was some "traffic matter" for which Plaintiff could have been arrested; disputed that any August 26 phone call between Ramos and Medford involved a conversation that she was now willing to testify but, instead, had to do with the fact that she had not kept up with her end of the bargain to avoid being arrested, and knew she would testify against Fatai. | See sources in ¶¶3, 7, 30; Ex. 32, Plaintiff Dep., at 190 (driver's license was valid); Ex. 3, Muraoka Dep., at 33 (same). |
| 34. **Disputed**. | Defendants' own sources. |
| 35. **Disputed**, as stated above in response to ¶¶30, 33; the conversation with Medford, after the search failed to reveal any drugs, had to do with the fact she had not sufficiently cooperated with Ramos, after he coerced her to do so. | See sources in ¶¶3, 7, 30. |
| 36. **Disputed**. See ¶¶3, 7, 30, 33. | |
| 37. **Admit** | |
| 38. **Admit in Part, Disputed in Part**. Admit that the case was "conferred" to DPA, disputed that there was probable cause (a legal conclusion, not a fact defendants can opine on) or that Medford's willingness to testify was a changed circumstance when, in fact, they had already decided to arrest Fatai and what had changed was a second search that turned up zero drugs. | |
| 39. **Disputed** that Ramos and Muraoka had nothing to do with the decision to prosecute Fatai; they wrote police reports they would be used to enable a prosecution of Fatai; they testified against him numerous times; they knew the purpose of their actions was to prosecute Fatai; Defendant Ramos signed the criminal complaint against Fatai and, as lead agent, could have declined to have Fatai arrested or prosecuted; Defendant Muraoka brought the drugs to/from court numerous times; Ramos knew his reports would be relied on by prosecutors; Defendants could have halted their efforts against Fatai on August 24, 2011 when they realized he was innocent but did not;, and they could have informed | Ex. 3, Muraoka Dep., at 13, 111, 173-74, 185-86Ex. 6, Ramos Dep., at 25-26, 28, 36-37, 380-81, 386; See Ex. 27 (criminal complaint); Ex. 1 (Muraoka Report); Ex. 18 (Ramos initial report); Ex. 23 (Ramos closing report); Ex. 12 (2011 Grand Jury); |

| | | |
|---|---|---|
| | the prosecutors of the fact they knew Plaintiff was innocent as well as other material evidence they suppressed about Medford's background during the course of the criminal prosecution. | Ex. 13 (2013 Grand Jury); Ex. 8 (Ramos 2015 Trial Testimony); Ex. 11 (Muraoka 2016 Trial Testimony); Ex. 10 (Ramos and Muraoka 2016 Testimony); Ex. 28, Muraoka Second Dep., at 13-14, 29-30; Ex. 29, at 20. |
| 40. | **Admit in Part, Disputed in part.** Undisputed that police have obligation to testify truthfully, but that obligation is not limited to testimony elicited by a prosecutor; and disputed that truthful testimony is what happened in this case. | |
| 41. | **Disputed**. | See *supra* ¶¶3, 7, 30, 33. 35, 36. |
| 42. | **Disputed**. | See PSOF ¶¶ 20-40. |
| 43. | **Admit in Part, Disputed in Part.** Undisputed that Defendants failed to record serial numbers of the $1,900 buy money; undisputed that Fatai did not ever have that money; undisputed that there was no probable cause when defendants did not find that $1,900; but disputed that there is "no nexus to probable [cause]," because there was no probable cause to arrest Plaintiff at all (and objection to the opinion testimony of the officers). | |
| 44. | **Disputed,** given they prosecuted an innocent man and did so in violation of his constitutional rights. | *E.g.* PSOF ¶¶1, 7, 17-20. |
| 45. | **Admit in Part, Disputed in Part.** Undisputed that there is a separate forfeiture section that handles car forfeiture, but disputed that the officers who set forth the forfeiture process "weren't involved with the forfeiture" | |

| | |
|---|---|
| 46. **Admit in Part, Disputed in Part.** Undisputed as to the times that Plaintiff was not in custody but disputed as to whether Fatai made "no attempts to obtain the Lexus" because asking his attorney to do that on his behalf constitutes an attempt to get the Lexus back | |
| 47. **Admit**, but immaterial. | |
| 48. **Admit** | |
| 49. **Admit** | |
| 50. **Admit in Part, Disputed in Part**. Admit that Fatai was confined at this time, disputed as to the implication that Fatai had committed some form of "contempt" when, in fact, he was simply re-arrested after he had been re-indicted by the grand jury and then released when, two weeks later, he was finally able to post bond. | See Ex. 32, Plaintiff Dep., at 190-94 |
| 51. **Admit in Part, Disputed in in part**. Admit that the Court did grant a motion *in limine* (though this fact is immaterial). Disputed as to the characterization of the trial as "sterile" and the assertion that Medford had "prior transactions with Fatai," when in fact no such transactions took place and the claims that drug trafficking had occurred were false. | Ex. 32, Plaintiff Dep., at 120. |
| 52. **Admit in part.** Admit there was a mistrial due to Medford's testimony including improper, prejudicial statements, not simply a violation of motions in limine. | |
| 53. **Admit in Part, Disputed in Part**. Admit that these were the allegations; disputed that any form of violation of the no-contact order took place. | Ex. 32, Plaintiff Dep., at 202-03. |
| 54. **Admit in Part, Disputed in Part**. Admit the documents say what they say, but disputed as to the underlying events that took place (which relate to separate matters, (1) the "elevator incident," see ¶53 response, and (2) Fatai being stopped for a curfew violation as he was simply driving home from work and that was the result of the ongoing prosecution against him for drug-trafficking crimes he did not commit in 2011. | See Ex. 32, Plaintiff's Dep., at 200-01. |

| | |
|---|---|
| 55. **Admit in Part, Disputed in Part**. Undisputed that the trial commenced and went through a full trial in March of 2016; undisputed the trial resulted in a hung jury; disputed as to the numbers involved in the jury being hung, and basis for that assertion (double hearsay). | |
| 56. **Admit in Part, Disputed in Part.** Disputed as to what "the law changed" means or how this is relevant; undisputed (though immaterial) that there was a speedy trial waiver and waiver of another probable cause determination in 2016 | |
| 57. **Admit in Part, Disputed in Part.** Undisputed that counsel withdrew; and that is what the documents say but disputed as to the underlying events (which are separately immaterial). | |
| 58. **Admit**, but immaterial. | |
| 59. **Admit**, but immaterial. | |
| 60. **Admit in Part, Disputed in Part**. Undisputed that counsel filed these motions but immaterial and disputed to the extent that the statement implies Fatai made these decisions personally. | |
| 61. **Admit in Part, Disputed in Part.** Undisputed that the court made these statements; disputed as immaterial and disputed to the extent Defendants are trying to imply that Medford actually showed up to court each time the case had been set for trial but was continued. | |
| 62. **Disputed**. This allegation is too vague to warrant response, as it does not define "alleged mistakes," as HPD is not a monolith; and what constitutes "these same issues at trial" is vague as well. It is disputed that each of the issues raised in this suit were addressed by counsel at any criminal proceeding and, Defendants have now disclosed a wealth of other information that was never presented in the criminal proceedings. | See generally PSOF, ¶¶20-40. |

**PLAINTIFF'S ADDITIONAL CONCISE STATEMENT OF FACTS**

| **Plaintiff's Concise Statement of Material Facts** | **Evidence** |
|---|---|
| 1. Sefo Fatai is a hardworking auto-mechanic and is innocent of the alleged drug trafficking crimes in August of 2011 for which he was wrongfully arrested, prosecuted, and twice tried. | Ex. 32, 22, 120, 240 |
| 2. In 2011, Fatai also did odd jobs for a friend named Tanya Waller, who ran a cleaning company. | Ex. 32, 238 |
| 3. Waller informed Fatai that Kristine "Misty" Medford owed her $100 and asked him to meet Medford to collect the debt after a conversation between them that did not include Fatai. | Ex. 32, 174-75, 194-95 |
| 4. On 8/24/11, Fatai went to Chuck-E-Cheese in Pearl City to pick up the $100 from Misty, who got into Fatai's car and tried to give Fatai a bag of methamphetamine ("meth") she pulled from underneath her shirt and within her bra. | Ex. 32, 168, 194-96 |
| 5. Fatai rejected the drugs and said reminded her he was there to pick up Waller's $100, so Misty got out of the car and left. | Ex. 32, 196-97. |
| 6. Misty did not have a Crystal Light box when she exited Fatai car but had hidden one in her vehicle, a full-size SUV. | Ex. 6, 137-38, 148-49, 334-37; Ex. 21; Ex. 33, 23-26 |
| 7. Fatai drove away followed by two HPD motorcycle units and was pulled over though he had committed no violation so they could run his background and subject him to an extensive but fruitless search of his person and car, which Muraoka supervised. | Ex. 32, 121-23, 147-48, 197 |
| 8. Fatai had a clean background, was given a (fake) "warning," allowed to leave, and "didn't' think nothing of it." | Ex. 32, 123, 189; Ex. 3, 33. |
| 9. Unbeknownst to Fatai, his interactions with Misty were part of an HPD operation led by Ramos and that included Muraoka. | Ex. 6, 209; Ex. 3, 87 |
| 10. Unknown to Fatai, Misty, a meth dealer, had been caught with meth and drugs the day before (which Ramos took but destroyed) and was then coerced by Ramos into being an HPD informant. | Ex. 6, 165-78 |
| 11. Unbeknownst to Fatai, Misty was supposed to lead officers to her supplier to avoid her own drug-dealing-related arrest but was unsurprisingly unwilling to do so and had falsely accused an innocent person—Fatai—of being a big-time meth dealer/supplier. | *Id.*; Ex. 32, 240. |
| 12. Defendants knew Misty was obviously unreliable and unlikely to frame her supplier (likely her husband) given she had just been caught with drugs; had been threatened numerous times in "knock and burns"; had been the subject of many community complaints; and, even though Ramos had to coerced her to participate, he was concerned Misty would quickly change her mind. | Ex. 6, 155-79, Ex. 32, 240; Ex. 3, 23-23, 88-95 |

| | |
|---|---|
| 13. Per HPD policy and experience, Defendants knew it was important to document informants—who might lie or case the wrongful conviction of an innocent person. | Ex. 14; Ex. 3, 217 |
| 14. On 8/23/11, per policy, Ramos made a "thorough" file documenting Misty as an informant which, among other things, includes rules an informant must follow, their participation in the prosecution, and that they must sign. | Ex. 14; Ex. 6, 95-97, 103-08, 114, 117 |
| 15. Ramos's "informant file"—which was newly created because Medford was previously a target, not an HPD informant—was never disclosed to Fatai or prosecutors and has been destroyed. | Ex. 6, 109,116-18, 154-56, 162, 176, 362 |
| 16. Misty was given $1900 in HPD monies to make a drug purchase but, in a gross departure from HPD requirements, and in the biggest drug case as a District 8 officer he ever handled, Ramos did not document, xerox, or otherwise mark the $1900 he gave to a known drug dealer. | Ex. 6, 51-52, 120-21, 259, 355-56; Ex. 17; Ex. 34, 100 |
| 17. Surveillance officers were at the Chuck-E-Cheese, including just feet away from Fatai, and none saw a transaction, and none saw Medford exit Fatai's car with a Crystal Light Box. | Ex. 4, Ex. 6, 138-39, 240; Ex. 21; Ex. 33, 36-26; Ex. 34, 94-95. |
| 18. The Muraoka-supervised search of Fatai and car—which Ramos has admitted was to try to find the money—turned up no drugs or the $1900 so Defendants knew (via radio), at that moment on 8/24/11, that Plaintiff was innocent of drug trafficking. | Ex. 6, 371-74; *supra* ¶7; Ex. 8, 87. |
| 19. Rather than ceasing their pursuit of Fatai, Ramos and Muraoka accepted Medford's Crystal Light box of drugs and then "doubled down" on Fatai by seeking, and obtaining, a search warrant. | Ex. 5, DSOF, ¶¶24-25; Ex. 3, 161, 169-70 |
| 20. Though the warrant was full of falsehoods and omissions (see below), and even though they knew she had been untruthful (and should have known *she* had the $1900), Defendants used Misty to arrange an 8/26/11 meeting with Fatai after already having decided to arrest him, regardless of whether he had any drugs. | *Supra* ¶¶6-7, 16-18; *infra* ¶¶37-38; Ex. 34, 65-66 |
| 21. Fatai arrived, again, to pick up money Misty owed Waller and, after pointing their guns at him, officers searched Fatai's car and again found no drugs, making Fatai's innocence glaring. | Ex. 6, 135; Ex. 32, 150; Ex. 34, 71, 99 |
| 22. Defendants arrested Fatai and began a criminal prosecution of him for crimes they knew he did not commit by writing additional police reports, understanding this was the purpose of their reports, even though they could have ended things without prosecution or making a criminal complaint. | Exs. 1, 5, 19, 23 & 27; Ex. 3, 13, 54-55, 111; Ex. 6, 36-37, 380-81, 385-86 |

| | |
|---|---|
| 23. As a result of their actions, including their numerous documents being provided to the prosecutors, Fatai was indicted by a grand jury in 2011 and, after the charges had been dismissed without prejudice, again in 2013, after which time the case went to trial in September of 2015 (a mistrial) and March of 2016 (a hung jury) before the prosecution finally concluded in 2018. | *Supra* ¶22; Ex. 12, Ex. 13; Ex. 8, Ex. 9, Ex. 10; Ex. 11; DSOF, ¶59. |
| 24. The entirety of the various times Plaintiff was incarcerated between 2011 and 2018 was related to the 2011 drug prosecution not for any unrelated, separate alleged crime. | *See* DSOF, ¶¶50 54, 59 (and response) |
| 25. Ramos and Muraoka's work was the reason the prosecution of Fatai moved forward and were core to in the prosecution over time, when: (1) they wrote various reports, individually and collectively; (2) both testified before both grand juries; (3) both participated in the 2015 trial (Ramos testified and Muraoka brought the drugs); (4) both testified at the 2016 trial; and (5) both were given updates by prosecutors about the fact that Fatai was being prosecuted and, after 2015, knew he was incarcerated—a fact the prosecutor knew would please them. | *Supra* ¶¶22-23; Ex. 3, 173-74, 185-86; Ex. 5; Ex. 30, generally and especially at 2930, 2969 |
| 26. Fatai suffered immense emotional/mental trauma damage as a result of the bogus prosecution and lost his fiancé and son. | Ex. 32, 81-83 |
| 27. At no point did Defendants disclose that they knew, by 8/24/11 and confirmed again on 8/26/11, Fatai was innocent; that they knew there was no probable cause to prosecute Fatai; or that their reports contain false/misleading information. | *Supra* ¶¶22-23, 25; *infra* ¶¶28-40. |
| 28. Though (1) no one *saw* a transaction, and (2) Defendants had evidence they *knew* one had not happened, they falsely wrote Fatai participated in narcotics transaction on 8/24/11. | *Supra* ¶¶6-7, 17-18, 20-21; Ex 1, 35, 37; Ex. 19, 5-6; Ex. 23, 42; |
| 29. There is no evidence Misty's drugs were dusted for prints, including Muraoka's own report says the drugs were "not dusted," but Ramos's report claims no prints were found. | *Compare* Ex. 1, 35; Ex. 31, 30-34; Def. Ex. C, *with* Ex. 23, 42. |
| 30. Muraoka—who was uniformed specifically to stop Fatai and so he would think the stop was random—falsely wrote he stopped Fatai based upon a traffic violation (which was not his assignment and did not occur), and further omitted the motorcycle officers were with him and the search of Fatai and his car. | Compare Ex. 1, *with* ¶XX; Ex. 3, 75. |
| 31. The timelines in Ramos's report are simply impossible; they require Muraoka be in two places at once and ignore the actual | Ex. 6, 289-90, 289-304; Ex. |

| | |
|---|---|
| time it would actually take to perform acts and drive between places (*e.g.*, Chuck E Cheese, the stop, and the park and ride). | 3, 117, 128-29, 133. |
| 32. Defendants knew they were supposed to search Misty before and after the operation, but failed to do so: they could not and did not physically touch Medford at all (due to HPD gender-based rules); they did not document a search in their reports or with pictures; they have been inconsistent about why they did not have a woman there (Ramos says it was the plan, given his distrust for other female HPD officers, Muraoka says it was last minute); and Misty hid (1) a Crystal Light box of drugs somewhere (which she gave to them) and (2) the $1900 of HPD money (which she kept). | Ex. 3, 146-47; Ex. 6, 81-82, 87, 376-77; Ex. 10, 39-40; DSOF, ¶14 (response); *supra* ¶¶6, 7, 17, 18. |
| 33. Defendants' reports falsely suggest they were given only a bag of drugs and omit the box, which they destroyed instead of sending it for available photographing or forensic analysis. | Ex. 3, 34-38, 115, 199-200; Ex. 6, 313-14, 342, 346. E. 2 |
| 34. Muraoka admits, as policy confirms, destroying the box was a wrong thing to do, as the box was evidence. | Ex. 28, 41; Ex. 15, 1, 3 |
| 35. Medford disclosed the Crystal Light box, after defendants had destroyed it, otherwise no 2011 record of it would exist at all | Ex 25, Ex. 6, 334 |
| 35. The box could have been fingerprinted to potentially provide favorable evidence, and, regardless, the box *itself* could have been used to impeach the officers' suggestion they searched Misty, that the box came from Fatai (which no one observed at the scene), and fact their reports do not mention it either. | *Supra* ¶¶6-7, 17-18. |
| 36. Muraoka and Ramos worked together on the search warrant. | Ex. 3, 161 |
| 37. The search warrant includes false or misleading statements, including: (1) the informant contacted Ramos and stated their wiliness to assist in an investigation (when Ramos coerced her into agreeing to participate); (2) the informant said she called Fatai (when Misty spoke with Waller); (3) a pre-buy search of Misty was conducted (when she was not physically searched); (4) the $1900 issued to Misty were "pre-recorded monies" (when they were not recorded at all); (5) that a post-buy search of Misty was conducted (when she was not physically searched); (6) Misty said she contacted Fatai on 8/24/11 (when she contacted Waller); (7) that Misty gave "pre recorded monies" to Fatai (when the money was not pre-recorded and the officers knew Fatai did not have the money); (8) that Fatai "took the order for narcotics and accepted monies for the narcotics purchases" (which did not occur); (9) that Misty was a "reliable informant" (when they knew she was not); | Compare Ex. 5, *with* supra ¶¶1, 3, 6, 7, 1-12, 14-20; DSOF (responses), ¶¶1, 3, 5, 35. |

| | |
|---|---|
| (10) that they had been "using this Informant for the last six months and the information provided has resulted in two (2) Methamphetamine Trafficking in the Second Degree cases and two (2) ongoing-narcotic investigations" (when Misty had never been an informant before and she herself was the *target* of controlled buys); and (11) that disclosure of Misty's identity would "impair the future usefulness of the Informant" and endanger her life (when Misty had not previously been an informant and there was no danger to her life, especially when her identity was disclosed 48 hours later saying she would testify). | |
| 38. The warrant also omitted significant information illustrating Misty was not reliable and there was no probable cause, including: (1) she was actually a drug dealer who Defendants had purchased from; (2) she was subject to "knock and burn" operations at her house, but did not stop drug trafficking; (3) Ramos had coerced her on 8/23/2011; (4) that the drugs came in a Crystal Light box, not just a baggie; which no officer reported seeing Misty carry after she got out of Fatai's car; (5) the Crystal Light box was discarded; and (6) the 8/24 search of Fatai's car did not result in the discovery of any drugs, HPD money, or contraband. | *Id.* |
| 39. Defendants failed to disclose material evidence that could have been used at trial or other points in the prosecution, including: (1) their own misconduct; (2) their knowledge of Fatai's innocence; (3) the existence and identify of the motorcycle officers; (4) that Ramos's actions toward Misty were coercive; (5) the real circumstances involving Medford's participation (not a traffic stop but that she was sitting in a golf course parking lot); (6) that Medford was the subject of two controlled buys supervised by Muraoka where she was the *target* of the buy and sold drugs to an informant; (7) that the "deal" made to Medford to avoid arrest was not just the drugs she had on 8/23 but included the two other "buys" for Muraoka's pending warrant; (8) oral and written complaints they received about Medford's drug dealing; (9) the numerous "knock and burns" of Medford's home, which involve a threat; (10) documentation of the money and drugs Medford had on her person 8/23/11; (12) their handwritten notes from the investigation; and (13) Ramos's new "informant file" for Misty. | Compare generally Exs, 1, 5, 7, 8, 9, 10, 11, 12, 13, 19, 20, 23, 25, 26, 27, *with supra* ¶¶1-38, *and* DSOF (responses), ¶1, 2, 3, 4, 5, 7, 13, 14, 18, 19, 25, 29, 30, 31, 33, 35, 39, 43 |
| 40. As is typical, the arrest warrant is based almost entirely on Ramos's and Muraoka's work (e.g., the search warrant, their reports), which the author (Ofc. Nahulu) did not know himself. | Ex. 34, at 44-46, 103-122 |

DATED: December 12, 2022

          Respectfully Submitted,

          **SEFO FATAI**

          <u>By: David B. Owens</u>

<u>/s/ David B. Owens</u>
DAVID B. OWENS*
LOEVY & LOEVY c/o
CIVIL RIGHTS AND JUSTICE CLINIC
UNIVERSITY OF WASHINGTON LAW SCHOOL
WILLIAM H. GATES HALL, SUITE 265
P.O. BOX 85110
SEATTLE, WA 98145-1110
(312) 243-5900
david@loevy.com
*admitted pro *hac vice*

<u>/s/ Jennifer Brown</u>
JENNIFER BROWN, #10885
P.O. Box 8415
Honolulu, HI 96815
(808) 554-5576
jenlbrownlaw@gmail.com
*Attorneys for Plaintiff*

## Certificate of Service

I, David B. Owens, an attorney, certify that on December 12, 2022, I filed the foregoing via the Court's electronic filing service which effectuated service on all counsel.

/s/ David B. Owens