IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| SEFO FATAI,<br><br>      Plaintiff,<br><br>vs.<br><br>MARK RAMOS and FUMIKAZU MURAOKA, in their individual capacities,<br><br>      Defendants. | Case No. 19-cv-603-DKW-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY** |

Plaintiff Sefo Fatai moves to exclude eight opinions of defense police procedures expert, Dr. John G. Peters, Jr., on various bases. As explained below, the motion is GRANTED with regard to the second, fifth, sixth, seventh, and eighth opinions, and DENIED with regard to the first, third, and fourth.

## LEGAL STANDARD

The overarching purpose of expert testimony is to aid the jury in deciphering and understanding the material facts of the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). To that end, Federal Rule of Evidence 702, which governs the admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

1

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

When applying this rule, it is a trial court's responsibility to "ensure that any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert*, 509 U.S. at 591; *see also United States v. Valencia-Lopez*, 971 F.3d 891, 897–98 (9th Cir. 2020) (describing the trial court's "gatekeeping obligation" under Rule 702 and *Daubert*); *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001) (requiring sufficient factual foundation); *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (requiring more than "mere subjective beliefs or unsupported speculation").

In addition to Rule 702's requirements, expert testimony is subject to certain prohibitions to ensure it does not invade the province of the judge or jury. For example, an expert may not provide testimony that amounts to a "legal conclusion[] as to the ultimate issues in the case." *Torres v. City of L.A.*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008); *United States v. Tamman*, 782 F.3d 543, 552 (9th Cir. 2015) ("[A]n expert cannot testify to a matter of law amounting to a legal

conclusion."). Nor may an expert draw his own inferences from the facts of a case that require no specialized or technical knowledge—in effect, substituting his own inferences for those the jury is capable of drawing. That includes making credibility determinations or opining as to an individual's state of mind. *See Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . .").

## RELEVANT BACKGROUND[1]

Defendants Mark Ramos and Fumikazu Muraoka intend to use Peters as their expert in police practices during trial. Accordingly, they have disclosed Peters' "Expert Opinion Report," dated October 7, 2022, which outlines nine opinions Dr. Peters wishes to proffer at trial:

1. Corporal Ramos had received narcotics training by the City and County of Honolulu prior to his working as a narcotics investigator, which is consistent with police training standards and career and technical education guidelines.

2. If Corporal Ramos deviated from Honolulu Police Department policy by not creating a Confidential Informant (CI) file and maintaining it, it is at best an administrative violation of a policy.

3. Plaintiff's police practices expert, Gregory Lee, was critical of [] how Corporal Ramos managed the Confidential Informant in this

---

[1] A more extensive factual and procedural background for this case can be found in the Court's order denying summary judgment, Dkt. No. 311.

> "Weed and Seed" operation and appeared to use federal Drug Enforcement Administration (DEA) "standards" as a basis for his critical opinions, even though the DEA has a history of failing to always properly manage a Confidential Informant using its management "standards."
>
> 4. Neither Corporal Ramos nor Officer Muraoka had the authority to determine Probable Cause and/or to prosecute Mr. Fatai and/or to re-prosecute him because these decisions are up to the Prosecuting Attorney's Office (PAT) and by the judicial officer issuing search and/or arrest warrants.
>
> 5. My content analysis of the documents reviewed failed to indicate bias toward Mr. Fatai by Corporal Ramos and/or Officer Muraoka.
>
> 6. My content analysis of the documents reviewed failed to indicate any deliberate fabrication of evidence by Corporal Ramos and/or Officer Muraoka because they did not authorize the arrest warrant or the prosecution of Mr. Fatai.
>
> 7. Plaintiff has not produced statistically significant data showing he was maliciously prosecuted by Corporal Ramos and/or Officer Muraoka.
>
> 8. Mr. Lee failed to opine on Officer Muraoka's actions during the narcotics investigation that lead to the arrest and prosecution of Mr. Fatai.
>
> 9. The search of Ms. Medford and both searches of her car were consistent with search and investigatory practices.

*See generally* Dkt. No. 307-1.  For his part, Fatai intends to use the opinions of his own police practice expert, Gregory Lee.  *See* Dkt. No. 309 at 3.

On January 20, 2023, Fatai filed a motion to exclude the first eight of Peters' nine opinions.[2]  On February 6, 2023, Defendants opposed the motion, Dkt. No. 309, and, on February 13, 2023, Fatai replied.  Dkt. No. 310.  This Order follows.

## DISCUSSION

**1.     Peters' first opinion—that Ramos' police training was proper under "Hawaii law enforcement standards"—is not excluded.**

Fatai contends that Peters' first opinion is not supported by sufficient facts or data because Peters "has no expertise in Hawaii[-specific] policing rules, standards, or practice," and has not "cited any documents that could supply the basis for this opinion."  Dkt. No. 307 at 7.

The Court disagrees.  *See* Dkt. No. 309 at 1–2.  Peters has provided an adequate basis for his opinion that Ramos' training was consistent with Hawaii's law enforcement standards, *see* Dkt. No. 309-1 ¶¶ 3–5.  To the extent that Fatai wishes to challenge that proposition, he may cross-examine Peters at trial.

However, this is not to say that Peters has *carte blanche* to opine as an expert in all things-HPD—he does not appear to be an HPD expert, despite his experience teaching Honolulu officers about *national* policing standards.  *See id.*  Thus, in general, Peters should confine his testimony to the areas of his expertise—that is, to generally accepted police practices and standards.  *See Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) (showing that, ideally, police practices experts

---

[2] Fatai does not seek to exclude Peters' ninth opinion.  Dkt. No. 307 at 6–7.

should identify generalized standards that police officers typically follow and then evaluate whether the Defendants complied with or departed from those standards); *Valencia-Lopez*, 971 F.3d at 900–01 (it is axiomatic that experts should confine their testimony to areas within their expertise); *see also* Dkt. No. 310 at 7 (admitting that Lee, like Peters, also lacks expertise in Hawaii-specific law enforcement standards).

2. **Peters' second opinion—that, to the extent Ramos deviated from HPD policy by failing to properly create and maintain a CI file, such a deviation would be "at best an administrative violation, not a criminal act"—is excluded.**

Fatai seeks to exclude Peters' second opinion because it is both unnecessary and irrelevant and requires a legal opinion that is inappropriate for expert testimony. Dkt. No. 307 at 10.

The Court agrees. First, as Defendants concede, opining as to whether Ramos' actions constituted "a criminal act" is an impermissible and unnecessary legal conclusion. Dkt. Nos. 309 at 8, 310 at 8. Second, to the extent Peters wishes to assert that Ramos' actions constituted only or, in his words, "at best" an administrative violation, or to *imply* that Ramos' actions did not constitute a constitutional violation, his opinion fares no better. *See Torres*, 548 F.3d at 1214 n.11 (excluding expert opinion testimony that amounted to legal conclusions); *see also Tamman*, 782 F.3d at 552; *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017).

For their part, Defendants claim that Peters' assertions in these respects are responsive to the following opinions of Lee, Fatai's police practices' expert:

> [That] (1) Ramos "secreted" the CI file, that (2) Ramos "admitted" he violated policy, (3) what Ramos did was "contrary to the intent of any [HPD] policy," (4) Ramos "should have" followed the policy, and that all policies are "mandatory" and there are no "exceptions to them," and (5) keeping a CI file in his cabinet was "poor judgment" on his part.

Dkt. No. 309 at 7. Defendants argue that "[a]llowing [these] opinions," which "insist[] that Ramos was required . . . to do certain things . . . would be prejudicial and improper," Dkt. No. 309 at 8, at least without allowing Peters' response.

The Court disagrees. First, as Fatai notes, Defendants appear to be arguing that Fatai's motion should be denied because Fatai's *own* expert's opinions should be excluded. *See* Dkt. No. 310 at 3–4. Not only is this illogical, but Defendants had an opportunity to file their own motion to exclude Lee's testimony, and they did not do so. *See id.* Second, even if Defendants *had* challenged Lee's five cited opinions, they have not shown that those opinions are legal conclusions or should be otherwise excluded. The opinions appear to be closely tethered to alleged facts and/or to Lee's interpretation of applicable policies and what they required, pursuant to his experience as a general police practices expert. They do not contain legal conclusions, as does Peters. Peters is welcome to rebut Lee's opinions if he disagrees, but not with a legal conclusion of his own.

3. **Peters' third opinion—that Lee used federal Drug Enforcement Administration ("DEA") standards as a basis for his opinions with regard to Ramos' CI file, "even though the DEA has a history of failing to always properly manage a CI using its management 'standards'"—is not excluded at this stage.**

It is unclear how Defendants intend to offer this opinion. If Lee indeed roots his testimony about Ramos' handling of the CI file in the DEA's CI-management standards, then fact or opinion regarding the manner in which the DEA develops or executes its own standards appears to be a fair response.

4. **Peters' fourth opinion—that it was up to the prosecuting attorney's office to decide whether to prosecute Fatai and it was up to a judicial officer to determine whether probable cause existed—is not excluded.**

Fatai contends that Peters' fourth opinion constitutes legal conclusions that must be excluded. Dkt. No. 307 at 18.

The Court disagrees. It is within Peters' expertise to provide this context for the jury. Peters may not, however, extend the challenged opinion by, for instance, commenting on causation—in other words, opining that Ramos and Muraoka's actions did not proximately *cause* the prosecutor to prosecute or the judge to issue a warrant or to deny dismissal of Fatai's case. These would be impermissible legal conclusions.[3] *See* Dkt. No. 307 at 18; *Torres*, 548 F.3d at 1214 n.1; *Tamman*, 782 F.3d at 552. Further, to the extent Fatai wishes to present evidence or argue that

---

[3] It should go without saying that Peters may not opine as to whether probable cause did, in fact, exist. *See Jimenez v. City of Chi.*, 732 F.3d 710, 721 (7th Cir. 2013) ("When an expert offers an opinion relevant to applying a legal standard such as probable cause, the expert's role is limited to describing sound professional standards and identifying departures from them.").

8

the decision to prosecute and decision regarding probable cause were made without the benefit of an accurate factual record because of Ramos and Muraoka, he may do so.

5. **Peters' fifth opinion—that Peters' "content analysis of the documents reviewed" did not indicate "any implicit or conscious bias toward Mr. Fatai"—is excluded.**

It is unclear why Peters wishes to offer an opinion about "bias" in this case. The opinion does not appear to be relevant to any material issue in dispute and is excluded for that reason. If, at trial, Lee opens the door by accusing Ramos and/or Muraoka of bias based, for instance, on one of Fatai's personal characteristics, the Court will revisit the exclusion of Peters' fifth opinion.

6. **Peters' sixth opinion—that his "content analysis of the documents reviewed failed to indicate any deliberate fabrication of evidence by Corporal Ramos and/or Officer Muraoka"—is excluded.**

Legal conclusion testimony, or testimony on "an ultimate issue of law," is improper because, "[w]hen an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *Diaz*, 876 F.3d at 1197. In determining what constitutes a legal conclusion, courts may pay special attention to whether the expert uses "legally specialized terms." *See U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*, 2019 WL 2992013 at *3 (D. Haw. July 9, 2019) (quoting *United States v. Duncan*, 42 F.3d 97, 102 (2d Cir. 1994); *Dold v.*

9

*Snohomish County*, 2023 WL 123335 at *2 (W.D. Wash. Jan. 5, 2023) ("The risk of usurping the jury's role is particularly acute when, as here, the expert seeks to testify using terms with 'specialized meaning in law.'") (citing *Diaz*, 876 F.3d at 1199).

In this case, deliberate fabrication of evidence is an element of at least one of Fatai's claims. *See Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (stating that the first element of a *Devereaux* "fabrication-of-evidence" claim is that "the defendant official deliberately fabricated evidence"); *see also* Dkt. No. 101 (Count III of Fatai's Second Amended Complaint ("SAC"), pleading a *Devereaux* violation). Therefore, Peters' sixth opinion is nothing more than a legal conclusion dressed up as a fact-based opinion. As it is impermissible for Peters to state, outright, that Ramos and Muraoka did not deliberately fabricate evidence, it is similarly impermissible for him to state that his "content analysis" did not "indicate" deliberate fabrication.

7.  **Peters' seventh opinion—that Fatai "has not produced statistically significant data showing he was maliciously prosecuted by Corporal Ramos and/or Officer Muraoka"—is excluded.**

Similar to his sixth opinion, Peters' seventh opinion is a thinly veiled legal conclusion. Peters may not opine that Fatai has not shown he was maliciously prosecuted—clearly a legal conclusion pertinent to Counts I and X—and the addition of meaningless language about "statistically significant data" does not

10

remedy the problem. *See* Dkt. No. 101 (Counts I and X of Fatai's SAC, pleading claims of malicious prosecution under federal and state law).

8. **Peters' eighth opinion—that Lee's opinion report did not state an opinion on Muraoka's actions during the drug investigation into Fatai— is excluded.**

What Lee's report contains is a factual issue that would not be aided by expert testimony. Peters' eighth so-called opinion is excluded for that reason. The so-called opinion is also simply wrong. *See e.g.*, Dkt. Nos. 307 at 20–21, 310 at 14.

## CONCLUSION

As described herein, the Motion to Exclude Defendants' Expert Opinion Testimony, Dkt. No. 307, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED: March 7, 2023 at Honolulu, Hawaiʻi.

Derrick K. Watson
Chief United States District Judge

---

*Sefo Fatai v. Mark Ramos, et al.;* Civil No. 19-00603-DKW-WRP; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY**